## UNITED STATES ex rel. DRURY v. LEWIS, WARDEN OF THE COMMON JAIL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 126. Argued December 12, 1905.—Decided January 2, 1906.

An officer and an enlisted soldier in the military service of the United States were indicted for murder and manslaughter and held for trial in a state court for having killed a citizen of the State who was not in the service of the United States, the alleged crime having been committed within the State, on property not belonging to, or under the jurisdiction of, the United States. On a writ of *habeas corpus* from a Circuit Court of the United States it was contended that petitioners were seeking to arrest the deceased for felony under the laws of the United States and that he met his death while attempting to escape, and as therefore the homicide was committed by petitioners in the discharge of their duties, the state court was without jurisdiction. On the hearing there was a conflict of evidence as to whether deceased had surrendered or not, and it was conceded that if he were not a fleeing felon the ground for Federal interposition failed. *Held*, that

The Circuit Court properly declined to wrest petitioners from the custody
of the state officers in advance of trial in the state courts.
*Ex parte Crouch*, 112 U. S. 178, applied.

RALPH W. DRURY and John Dowd were indicted in the Court
of Oyer and Terminer for the county of Allegheny, Pennsylva-
nia, on two counts, the first charging them with murder, and
the second with manslaughter, in the homicide of one William
H. Crowley, September 10, 1903. They were admitted to bail
in the sum of $5,000 each, and having been subsequently sur-
rendered, obtained a writ of *habeas corpus* from the Circuit
Court of the United States for the Western District of Penn-
sylvania. The case on the hearing was thus stated by Ache-
son, J., holding the Circuit Court:

"On September 10, 1903, Ralph W. Drury was a commis-
sioned officer of the United States Army, of the rank of second
lieutenant, and had under his command a detachment of twenty
enlisted men, of whom John Dowd was one, stationed at Alle-
gheny Arsenal, in the city of Pittsburg, in Allegheny County,
Pennsylvania, this arsenal being a subpost of Ft. Niagara, N. Y.
From time to time before September 10, 1903, some copper
down spouts and eave troughs had been stripped from some of
the buildings on the arsenal grounds and the material stolen,
and other depredations, such as the breaking of window lights,
had been committed on the arsenal property. Lieut. Col. Rob-
ertson, the commanding officer at Ft. Niagara, on the occasion
of an inspection of Allegheny Arsenal, in July, 1903, had di-
rected Lieutenant Drury to use his best endeavors to stop the
depredations, and to that end ordered him to establish a patrol
of the guards day and night upon the arsenal grounds, and to
apprehend and arrest any person or persons committing depre-
dations on the arsenal property. Shortly before 10 o'clock on
the morning of September 10, 1903, having received word that
some persons were stealing copper from one of the buildings on
the arsenal grounds, Lieutenant Drury took John Dowd, then
on guard duty, and another private soldier (each of the latter
being armed with a rifle and ammunition), and, passing out of

the arsenal grounds through the gate on Butler street, the three proceeded by way of Butler street and Almond alley towards the Allegheny Valley Railroad. Drury informed the two men of the reported stealing of copper and instructed them to continue down Almond alley and to arrest any person coming from the arsenal. Drury himself left Almond alley at the corner of Willow street and went by Willow street to Fortieth street (which runs along, but outside of, the arsenal wall), and proceeded down Fortieth street to its foot, where were congregated three or four half-grown boys or young men, among whom was William H. Crowley, aged about 19 or 20 years. These persons fled in different directions when they saw Lieutenant Drury approaching. Crowley ran from the foot of Fortieth street away from the arsenal property in the direction of Forty-first street, keeping on or near the Allegheny Valley Railroad. When he was about one hundred yards from the arsenal wall Crowley was shot by Dowd, who aimed and fired his rifle at Crowley. At the time of the shooting, Drury, Dowd, and Crowley were all off the grounds belonging to the United States. Each one of the three then stood either upon a street of the city, on the Allegheny Valley Railroad, or on private property. The rifle ball struck Crowley's left thigh, inflicting a mortal wound from which he died on the evening of the same day— September 10, 1903.

"Thus far the facts are not open to dispute under the testimony. But as to the circumstances attending the shooting of Crowley the evidence is conflicting and leads to opposite conclusions of fact as one or other version of the affair given by the witnesses is accepted. Dowd testifies, and the petitioners have produced other evidence tending to show, that as Crowley fled he was called on several times by Dowd, who followed him, to halt, with warning that unless he halted Dowd would fire; that Crowley did not halt, but continued his flight, and to prevent his escape behind or through a lumber pile Dowd fired, and that Drury did not order Dowd to fire, and was not connected with the shooting save by the fact that he ordered the

arrest of any person coming from the arsenal. On the other hand, two witnesses who were present (Mrs. Long and Miss Terwillerger) testify that before the shot was fired Crowley stopped, turned around facing the pursuing soldier (Dowd), threw up his hand, said, 'Don't shoot,' 'I will come back,' or 'I will give up,' and that just then Lieutenant Drury said 'Fire!' and Dowd fired the shot that killed Crowley. The testimony of at least one other witness tends to corroborate the account of the transaction given by the two named women as above recited. It is not for me to say whether or not the witnesses who have testified thus on the part of the Commonwealth are mistaken.

"In view of all the evidence herein, should this court interfere to prevent the trial of the petitioners upon the indictment in the state court, take the petitioners out of the custody of the authorities of the State, and discharge them finally without trial by any civil court in the regular administration of justice? This is the question which confronts me." 129 Fed. Rep. 823.

The court entered an order discharging the writ and remanding petitioners to the custody of the warden of the jail of Allegheny County, and from that order this appeal was allowed and prosecuted.

*Mr. Assistant Attorney General Purdy* for appellants:

United States officers and other persons held in custody by state authority for doing acts which they are authorized or required to do by the Constitution and laws of the United States are entitled to be released from such custody, and the writ of *habeas corpus* is the appropriate remedy for that purpose. *In re Neagle,* 135 U. S. 1; *In re Waite,* 81 Fed. Rep. 359; *Ohio* v. *Thomas,* 173 U. S. 276; § 761 Rev. Stat.

The petitioners upon this appeal are entitled to have this court examine the evidence and determine the facts in this case, and to decide whether or not these petitioners are entitled to be discharged from the custody of the warden. *Storti* v. *Massachusetts,* 183 U. S. 138, 143.

Only a few minutes before his death Crowley had committed

a felony within the arsenal grounds, a place under the exclusive jurisdiction of the United States, over which crime and the place where it was committed the courts of the United States had exclusive jurisdiction.

In the absence of any specific law upon the subject, the petitioners were charged with the duty of arresting persons guilty of stealing Government property under their custody. At the time of the homicide there existed a specific law of the United States under which these petitioners were acting in making Crowley's arrest. § 161 Rev. Stat.; *Campbell v. Thayer*, 88 Fed. Rep. 102, 106.

As to the responsibility of officers of the army in command of a post or station for the security of all public property in their custody or under their control, see §§ 739, 740, 764 and 766 of the Army Regulations for 1901.

If the laws of the United States imposed upon these petitioners the duty to arrest Crowley for the felony which he had committed, they were justified in making use of whatever force was necessary for the purpose of performing such duty, even to the extent of firing upon Crowley, if in no other way he could be apprehended. *Rex* v. *Geo. Howarth*, 3 Moody's Crown Cases, 207; *The Queen* v. *Dadson*, 2 Denison's Crown Cases, 35; *Regina* v. *Murphy*, 3 Crawford & Dix's Circuit Cases, 20; 1 East's Pleas of the Crown, 298; 1 Hale, 481; *Rex* v. *Finnerty*, 1 Crawf. & Dix's C. C. 167; 1 Hawkins, 881; 1 Russ. Crimes, 666; 3 Wharton on Crim. Law, § 2927; 1 Bishop Crim. Pro. § 159; 2 Bishop New Crim. Law, § 648; *Conraddy* v. *People*, 5 Parker (N. Y.), 234, 241; *Commonwealth* v. *Long*, 17 Pa. Super. Ct. 641, 647.

The petitioner Dowd was justified, under all the facts and circumstances of the case, in firing upon the felon Crowley for the purpose of effecting his arrest, and that the court of Oyer and Terminer of Allegheny County is without jurisdiction to try the petitioners on the indictment which has been found against them in that court. *Brish* v. *Carter et al.*, 57 Atl. Rep. (Md.) 210; *Olson* v. *Leindecker*, 97 N. W. Rep. (Minn.) 972;

*Brooks* v. *State,* 39 S. W. Rep. (Ga.) 877; *People* v. *Glennon,* 74 N. Y. Supp. 794; *Kirk & Son* v. *Garrett,* 84 Maryland, 383; *People* v. *Hochstin,* 73 N. Y. Supp. 626; *Stapely* v. *Commonwealth,* 6 Binney (Pa.), 316; *Brooks* v. *Commonwealth,* 61 Pa. St. 352; *United States* v. *Fuellhart,* 106 Fed. Rep. 911.

The evidence is conclusive that Crowley was wounded while fleeing from arrest. Even though Dowd used more force in attempting to make the arrest than he was warranted in using under the law, nevertheless since he was engaged in performing a duty imposed upon him by a law of the United States, the state courts are without jurisdiction to call him to account for the excessive use of force in performing a duty which the Federal laws commanded. *Ex parte Jenkins,* 2 Wall. Jr. 543; *In re Neagle, supra; In re Waite,* 81 Fed. Rep. 359.

There was no appearance for the appellee.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

In *Baker* v. *Grice,* 169 U. S. 284, 290, an appeal from the final order of the Circuit Court of the United States for the Northern District of Texas, in *habeas corpus,* it was said:

"The court below had jurisdiction to issue the writ and to decide the questions which were argued before it. *Ex parte Royall,* 117 U. S. 241; *Whitten* v. *Tomlinson,* 160 U. S. 231. In the latter case most of the prior authorities are mentioned. From these cases it clearly appears, as the settled and proper procedure, that while Circuit Courts of the United States have jurisdiction, under the circumstances set forth in the foregoing statement, to issue the writ of *habeas corpus,* yet those courts ought not to exercise that jurisdiction by the discharge of a prisoner unless in cases of peculiar urgency, and that instead of discharging they will leave the prisoner to be dealt with by the courts of the State; that after a final determination of the case by the state court, the Federal courts will even then generally leave the petitioner to his remedy by writ of error from

this court. The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, upon a writ of *habeas corpus*, be taken out of the custody of the officers of the State and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a State be finally prevented. Cases have occurred of so exceptional a nature that this course has been pursued. Such are the cases *In re Loney*, 134 U. S. 372, and *In re Neagle*, 135 U. S. 1, but the reasons for the interference of the Federal court in each of those cases were extraordinary, and presented what this court regarded as such exceptional facts as to justify the interference of the Federal tribunal. Unless this case be of such an exceptional nature, we ought not to encourage the interference of the Federal court below with the regular course of justice in the state court."

The rule thus declared is well settled and, in our judgment, it was properly applied in this case. Crowley was a citizen of Pennsylvania, not in the service of the United States, and was killed in or near a street of the city of Pittsburgh, and not on property belonging to the United States or over which the United States had jurisdiction.

The homicide occurred within the territorial jurisdiction of the Court of Oyer and Terminer, which, as Judge Acheson observed, was the only civil court which could have jurisdiction to try petitioners for the alleged unlawful killing, and the indictment presented a case cognizable by that court.

The general jurisdiction in time of peace of the civil courts of a State over persons in the military service of the United States, who are accused of a capital crime or of any offense against the person of a citizen, committed within the State, is, of course, not denied.

But it is contended on behalf of the Government that the state court was absolutely without jurisdiction to try petitioners for the killing of Crowley, because the homicide was com-

mitted by them "while in the lawful performance of a duty and obligation imposed upon them by the Constitution and laws of the United States." The argument is that Crowley had been guilty of the crime of larceny and could have been indicted and prosecuted on the charge of felony in the District Court of the United States under section 5439 of the Revised Statutes, or under section 5391, the United States having jurisdiction over the Allegheny Arsenal property and the Pennsylvania laws making what Crowley is alleged to have done a felony. Hence that it was the duty of petitioners to arrest Crowley and to surrender him to the Federal authorities for prosecution. And it is insisted that the fact is "established that Crowley met his death while attempting to escape arrest." But there was a conflict of evidence as to whether Crowley had or had not surrendered, and it is conceded that if he had, it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the Federal law, and the state court had jurisdiction.

The Circuit Court was not called on to determine the guilt or innocence of the accused. That was for the state court if it had jurisdiction, and this the state court had, even though it was petitioners' duty to pursue and arrest Crowley (assuming that he had stolen pieces of copper), if the question of Crowley being a fleeing felon was open to dispute on the evidence; that is, if that were the gist of the case, it was for the state court to pass upon it, and its doing so could not be collaterally attacked. The assertion that Crowley was resisting arrest and in flight when shot was matter of defense, and *Ex parte Crouch*, 112 U. S. 178, is in point.

We have repeatedly held that the acts of Congress in relation to *habeas corpus* do not imperatively require the Circuit Courts to wrest petitioners from the custody of state officers in advance of trial in the state courts, and that those courts may decline to discharge in the proper exercise of discretion. We think that discretion was properly exercised in this case.

*Final order affirmed.*