**MARSINO v. HOGSETT et al.**

District Court, D. Massachusetts.   January 16, 1930.

No. 4152.

410

See, also, 10 F.(2d) 534; 270 U. S. 627, 46 S. Ct. 206, 70 L. Ed. 768; 252 Mass. 224, 147 N. E. 859; 271 U. S. 642, 46 S. Ct. 472, 70 L. Ed. 1127; 37 F.(2d) 407.

Peter V. Maggio, of Everett, Mass., for plaintiff.

Joseph E. Warner, Atty. Gen., and S. D. Bacigalupo, Asst. Atty. Gen., for defendant Hogsett.

Charles B. Rugg, District Atty., of Worcester, Mass., for other appellees.

BREWSTER, District Judge. In the above-entitled petition for writ of habeas corpus, Judge Morton ordered the writ to issue, returnable January 6, 1930, at which time a hearing was held and evidence offered by both the petitioner and the respondent.

Marsino is now confined in the Massachusetts State Prison, of which the respondent Hogsett is warden. The writ having issued, two questions are now presented. They are whether the facts established by the evidence lead to the conclusion that Marsino is now in custody in violation of any right secured to him by the Constitution or laws of the United States, and, if so, shall he be discharged from custody in these proceedings?

The application upon which the writ in the case at bar was issued attacks in several ways the validity of the judgment, by virtue of which Marsino is now incarcerated, but, as Judge Morton pointed out in his opinion accompanying the order for the writ, the only federal question now open to the petitioner is whether the trial, conviction, and sentence in the superior court for the county of Worcester in May, 1924, shall be deemed null and void by reason of the provisions of Rev. St. § 766 (28 USCA § 465).

The facts, so far as pertinent to the present inquiry, may be briefly stated as follows:

The petitioner was involved in the wrecking of the First National Bank of Warren, Mass. On November 14, 1923, he was, in this court, sentenced to imprisonment in the federal penitentiary at Atlanta, Ga., for the term of 4 years and 9 months. While he was serving this sentence, an application was made to the Attorney General of the United States by a prosecuting attorney of the state for the production of Marsino before the state court of Massachusetts, in order that he might stand trial upon indictments which had, in the meantime, been returned against him in the superior court for the county of Worcester. This application was granted upon the condition, among others, that a writ of habeas corpus ad respondendum should issue by the state court requiring the presence of Marsino in the state court. After Marsino had been brought into Massachusetts by one Higgins, a federal officer to whom the custody of Marsino had

been committed, such a writ was issued by the superior court, commanding the warden to present Marsino before the court on the 14th day of May, 1924, "and from day to day thereafter, for trial on indictments numbered 148 and 151 pending before said court," but to remain at all times in the custody of an officer of the United States and subject to the sentence imposed by the United States District Court for the District of Massachusetts. This writ was served within this district upon Higgins. On the 15th day of May, 1924, Marsino filed in this court a petition for a writ of habeas corpus, alleging that he was restrained by Higgins in violation of the Constitution and laws of the United States. By amendment a new petition was substituted May 16. On the same day an order dismissing the petition and denying the writ was entered. On May 17, 1924, an appeal was taken to the United States Supreme Court, which, on January 25, 1926, affirmed the action of the lower court upon the authority of Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 310, 66 L. Ed. 607, 22 A. L. R. 879; Marsino v. United States, 270 U. S. 627, 46 S. Ct. 206, 70 L. Ed. 768.

Marsino was never tried upon indictments Nos. 148 and 151. These indictments were nol. pros'd, and new indictments for the same offenses, namely, larceny and conspiracy, were returned on the 16th day of May, 1924. On the 19th day of May, 1924, Marsino was called to the bar to stand trial on the new indictments. He was convicted and sentenced on the 29th day of May to imprisonment for a term of not less than 4½ years nor more than 5 years in the state prison in Boston, said sentence not to commence until his sentence in the federal court had terminated. The sentence imposed by the federal court having expired, a mittimus issued out of the superior court for the county of Worcester on March 26, 1927, by virtue of which Marsino is now held by the state authorities.

■ Rev. St. § 766, as amended March 3, 1893, c. 226, 27 Stat. 751, reads as follows:

"Pending the proceedings or appeal in the cases mentioned in the three preceding sections, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any State court, or by or under the authority of any State, for any matter so heard and determined, or in process of being heard and determined, under such writ of habeas corpus, shall be deemed null and void."

That the statute is equally effective to stay the proceedings in the state court when the matter heard and determined in the federal court arises upon an application for a writ of habeas corpus which is denied would seem to be clear from a reading of Rev. St. § 763, as it existed at the time Rev. St. § 766, was first enacted. This preceding section related to appeals from the final decision of the District Court upon an application for a writ of habeas corpus or upon such writ when issued. This view is supported by the authorities. In re Shibuya Jugiro, 140 U. S. 291, 11 S. Ct. 770, 35 L. Ed. 510; Lambert v. Barrett, 159 U. S. 660, 16 S. Ct. 135, 40 L. Ed. 296; McKane v. Durston, 153 U. S. 684, 14 S. Ct. 913, 38 L. Ed. 867; United States v. Shipp, 203 U. S. 563, 27 S. Ct. 165, 166, 51 L. Ed. 319, 8 Ann. Cas. 265; In re Ebanks (D. C.) 84 F. 311; Ex parte Martin (C. C.) 180 F. 209.

Does this statute apply to the proceedings had in the state court, out of which came the conviction, sentence, and finally the imprisonment of Marsino? If it does, then such proceedings are declared null and void by the federal laws.

In approaching the consideration of this question, we may take certain propositions to be beyond controversy. In 1924 Marsino was restrained of his liberty by authority of the United States and, while so restrained, he applied to this court for a writ of habeas corpus, alleging that he was so restrained in violation of the Constitution and laws of the United States. He appealed from an order of the court denying his application. Before final judgment had been rendered by the Appellate tribunal, proceedings in a state court were brought against him while so restrained.

The provisions of the section, however, are aimed at only proceedings in a state court which are for the same matter heard or determined or in the process of being heard and determined under the writ of habeas corpus. Consequently, the question comes to this: Were the proceedings in the state court "for any matter heard and determined" upon petitioner's application for a writ of habeas corpus which was denied May 16, 1924?

It becomes important to examine the earlier proceedings instituted in 1924 which resulted in an appeal to the Supreme Court of the United States in order to determine the exact scope and nature of the matters

then heard and determined. In the substituted petition it was alleged that Marsino was "unlawfully held in custody, imprisoned and restrained of his liberty at said Worcester, by the respondent, James Higgins, * * * without color of authority of law and in violation of his rights under the Constitution and laws of the United States, and particularly under the Fifth Amendment to said Constitution and section 1 of article 14 thereof," for the reason, as he alleges, that he was serving a term of imprisonment in the United States penitentiary at Atlanta; and "in violation of his rights as aforesaid, and in violation of the terms of the mittimus of" the federal court he was removed by Higgins "without the protection of judicial process, unlawfully and without adequate authority properly exercised, from said United States penitentiary at Atlanta to said city of Worcester where," as he believed, he was to be put on trial upon two indictments found by the grand jury of the county of Worcester for offenses against the laws of the United States.

To this petition the respondent answered denying that the custody, imprisonment, and restraint of Marsino was by virtue of any writ or process issued by the superior court for the commonwealth of Massachusetts, but that he was, in fact, in the custody and imprisoned and restrained by virtue of the original mittimus of November 14, 1923, and that such custody, imprisonment and restraint was not in violation of any rights of the prisoner secured by the Constitution or any laws of the United States.

Thus the issue was sharply drawn. It was whether Marsino's rights, secured to him by the Constitution and laws of the United States, had been invaded by the action of the Attorney General in assenting to, and the warden in complying with, the request of the authorities of Massachusetts that Marsino be taken from his confinement in the federal penitentiary at Atlanta and brought into Massachusetts to stand trial upon indictments pending in the criminal courts of that state. The petition was denied, and it is evident, from his opinion, that this was the only issue then considered by Judge Morton. The denial of the writ involved the conclusion not only that the restraint imposed upon Marsino's liberty by Higgins was lawful, but also that the action of the warden in producing Marsino for trial in Massachusetts did not violate any of Marsino's constitutional or legal rights. This is further made to appear when we note Marsino's requests for rulings made at the hearing, and especially the following request:

"2. The Attorney General has no power to direct, or to consent to, the removal of a prisoner from a federal penitentiary for trial in a state jurisdiction unless such consent is preceded by, and based upon, a writ of habeas corpus ad respondendum or other appropriate process directed to the official in whose custody such prisoner is, from a court having jurisdiction to issue the same."

▮ It must be noted that the earlier application by Marsino was directed to a federal rather than a state official. It did not attack, at least directly, any state proceeding. It was not alleged that he was restrained of his liberty under or by virtue of any state process. Is this sufficient to bring the matter outside of the pale of the statute? It is possible to find in the cases expressions indicating that the object of the statute was to cover "cases where the applicant was held in custody under the authority of a state court or by the authority of a state" to the end that the hands of such court or state might be stayed "while the question as to whether his detention was in violation of the Constitution, laws, or treaties of the United States was being examined." In re Shibuya Jugiro, 140 U. S. 291, 11 S. Ct. 770, 772, 35 L. Ed. 510. But nothing appears in the express terms of the statute to thus limit its application. This will be seen by recalling the provisions of the preceding sections mentioned in section 766. These provisions are broad enough to extend to the case of any person alleged to be restrained of his liberty in violation of the Constitution or laws of the United States, whether restrained under color of authority of state or federal courts. Obviously the statement, above noted, of the objects of section 766 is not to be taken as comprehending its entire scope, for the same court in later decisions defined in more comprehensive terms the aim and purpose of the section. Thus, in Rogers v. Peck, 199 U. S. 425, 436, 26 S. Ct. 87, 90, 50 L. Ed. 256, in speaking of section 766, the court observes:

"Statutes should be given a reasonable construction with a view to make effectual the legislative intent in their enactment. The object of this statute is apparent. It requires the state courts and authorities to make no order, and entertain no proceeding, which shall interfere with the full examination and final judgment in a habeas corpus

proceeding in the Federal courts (Re Shibuya Jugiro [Shibuya Jugiro v. Brush], 140 U. S. 291, 11 S. Ct. 770, 35 L. Ed. 510), and in no wise to interfere with the judgment if it shall result in a restoration of the petitioner's freedom when wrongfully imprisoned or restrained. The proceedings annulled are 'against the person so imprisoned,' etc. The statute aims to entirely prevent action which shall interfere with the perfect freedom of the federal courts to inquire into the case and make such orders and render such judgment as they shall see fit."

■■ Moreover, in deciding the question of the applicability of the statute it will be well to bear in mind the observations of Mr. Justice Pitney in Frank v. Mangum, 237 U. S. 309, 331, 35 S. Ct. 582, 589, 59 L. Ed. 969, that "the due process of law guaranteed by the Fourteenth Amendment has regard to substance of right, and not to matters of form or procedure; that it is open to the courts of the United States, upon an application for a writ of habeas corpus, to look beyond forms and inquire into the very substance of the matter, to the extent of deciding whether the prisoner has been deprived of his liberty without due process of law and for this purpose to inquire into jurisdictional facts, whether they appear upon the record or not; that an investigation into the case of a prisoner held in custody by a state on conviction of a criminal offense must take into consideration the entire course of proceedings in the courts of the state and not merely a single step in those proceedings."

In the light of these principles, all the pertinent facts and circumstances of the case must be viewed in order to ascertain the real substance of the matter in controversy arising on Marsino's first application for a writ of habeas corpus in the federal courts.

■ The state court, by returning indictments and calling Marsino to the bar for trial, thereby entertained proceedings which obviously interfered with the final judgment in pending habeas corpus proceedings. If the court had decided that Marsino's rights, secured to him by the Constitution and laws of the United States, had been invaded, as he claimed, by bringing him to Massachusetts for trial, the action of the state government would have rendered nugatory the judgment of the federal court. The fact that the action of the District Court denying the writ was finally confirmed

does not affect the situation because, as Mr. Justice Holmes indicated in United States v. Shipp, supra, until final judgment declining jurisdiction should be announced, the state court was bound to refrain from further proceedings. The "law contemplates the possibility of a decision either way, and therefore must provide for it. Of course, the provision of Rev. Stat. § 766, that, until final judgment on the appeal, further proceedings in the state court against the prisoner shall be deemed void, applies to every case. There is no implied exception if the final judgment shall happen to be that the writ should not have issued or that the appeal should be dismissed."

■ The fundamental issue raised by Marsino in his application for a writ in 1924 was whether he should be compelled to submit to trial in the Massachusetts courts under the circumstances of his case. The state could not, as a matter of right, compel the defendant to come on for trial while serving a sentence imposed by the federal court. It is purely a matter of comity between the two sovereigns, state and federal, as was pointed out in Ponzi v. Fessenden, supra. It was there held that one sovereign might waive its right to exclusive custody which it had for vindication of its laws in order that the other sovereign might also subject him to conviction of crime against it. "Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it." It was there held that the Attorney General was the representative of the federal government intrusted with the power to grant the concession. Undoubtedly, Marsino might, if he thought the representative of the federal government had exceeded his authority, question his act in habeas corpus proceedings, and until those proceedings were determined finally it could not be known whether the state court would be permitted to proceed with a trial of a federal prisoner.

■■ It is urged that this section should not be invoked for the reason that the indictments that were pending when the application for a writ was filed, on May 15, were nol. pros'd and that new indictments were not returned until this court had denied the application. The new indictments, however, were returned before the appeal was taken and were, therefore, pending when the appeal was entered. I do not think the respondent gains anything by these facts. They would tend to weaken, rather than

strengthen, his case because the writ of habeas corpus ad respondendum, issued by the state court, commanded the federal officer to produce Marsino to stand trial on indictments Nos. 148 and 151. There was never, so far as the record before me discloses, any habeas corpus writ issued by the state court commanding the officer to produce Marsino to stand trial on the new indictments. In that respect the state failed to comply with the conditions which the Attorney General had imposed. This failure, however, standing alone, would not, in my opinion, be a sufficient ground for declaring the proceedings in the state court void. It is a defect of which the defendant could not himself take advantage, and if the representatives of the federal government saw fit to waive this requirement, Marsino cannot complain.

◼ I am, however, of the opinion that section 766 would be equally applicable, whether the state advanced proceedings pending at the time of the application for a writ of habeas corpus in the federal court, or whether during the pendency of an appeal new proceedings of the same character were instituted. It is clear to me that the purposes of the statute cannot be defeated by the subterfuge of nol prossing earlier indictments and returning new indictments for precisely the same offenses after the federal court had denied the application for the writ. In order to prosecute on these indictments, it was necessary that Marsino attend in person before the courts at Worcester. These proceedings were possible only because the federal government, through its authorized representative, had seen fit to waive its right to exclusive custody which it had for vindication of its own laws, and the ultimate question pending before the Supreme Court on Marsino's appeal was whether the constitutional rights of Marsino had been violated by this waiver of exclusive custody and by the compulsory attendance of Marsino before the state tribunal.

It is fair to say that although an appeal was pending involving the question of the lawfulness of Marsino's presence in Massachusetts for the purpose of arraignment and trial for state offenses, the state went ahead and tried him for the same offenses as those for which his presence had been requested, without awaiting "final judgment" in such appeal. The purpose of the statute was thereby defeated. To attempt to justify by asserting that the pending matter related only to the authority of the Attorney General of the United States to waive exclusive custody of the defendant is to base justification on matter of form and to overlook the substance of the controversy.

◼ It is difficult to escape the conclusion that the proceedings before the state court necessarily involved substantially a matter heard and determined by the federal courts upon Marsino's first application in this court for a writ of habeas corpus. If this is so, then by the express terms of the statute the proceeding must be deemed null and void, and it follows that the petitioner, in the case at bar, is now being held under a mittimus based upon a judgment and verdict which was without force or effect, and he, therefore, is deprived of his liberty without due process of law and is restrained in violation of the laws of the United States.

◼ Having concluded that the proceedings in the state court must be deemed null and void by reason of the provisions of Rev. St. § 766 (28 USCA § 465), the question still remains whether it is the duty of this court to discharge the petitioner from the custody of the respondent. The authorities are clear that this court has power, in a proper case, to discharge the prisoner from a state prison upon habeas corpus proceedings if it is made to appear that he is deprived of his liberty in violation of the Constitution and laws of the United States. Rev. St. § 753; U. S. C. title 28, § 453 (28 USCA § 453); In re Neagle, 135 U. S. 1, 10 S. Ct. 658, 34 L. Ed. 55; Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969; Thomas v. Loney, 134 U. S. 372, 10 S. Ct. 584, 33 L. Ed. 949; Ex parte Royall, 117 U. S. 241, 6 S. Ct. 734, 29 L. Ed. 868.

◼ It is equally well settled that the court is not bound to discharge every such prisoner. This power of the court is to be exercised only in cases of emergency or cases presenting extraordinary circumstances. Ex parte Royall, supra; Whitten v. Tomlinson, 160 U. S. 231, 16 S. Ct. 297, 40 L. Ed. 406; Drury v. Lewis, 200 U. S. 1, 26 S. Ct. 229, 50 L. Ed. 343. Some of the cases, above cited, hold that the discretionary power ought not to be exercised before trial and before the applicant for a writ has exhausted his remedies in the state court, including his remedy by writ of error to the United States Supreme Court. Whitten v. Tomlinson, supra; Drury v. Lewis, supra; New York v. Eno, 155 U. S. 89, 15 S. Ct. 30, 39 L. Ed. 80.

◼ The case at bar, however, would seem to present an extraordinary situation which

warrants the court in exercising the power. While Marsino's conviction was reviewed by the Supreme Court of Massachusetts (Marsino v. Commonwealth, 252 Mass. 224, 147 N. E. 859), and a writ of error to the United States Supreme Court was dismissed (Marsino v. Massachusetts, 271 U. S. 642, 46 S. Ct. 472, 70 L. Ed. 1127), it appears from the report of the case in the Massachusetts Supreme Judicial Court, and in briefs filed by the commonwealth in the Supreme Court of the United States, that neither of these courts considered the question with which this opinion deals, and Marsino today has no opportunity to have the question passed upon by a state court. If he is in the state prison without due process of law, the only way of granting relief is by the exercise of the power vested in this court to enlarge him upon these proceedings.

Moreover, to do so would not seriously interfere with the administration of criminal justice in the courts. He has now served his full sentence for the federal crime, losing his parole presumably by reason of the proceedings in the state court, and has served nearly three years of the sentence imposed in the state court for an offense which grew out of the same acts as did the offense for which he was punished in the federal court.

While I confess that the question of the validity of the state court proceedings is not wholly beyond doubt, yet in view of the punishment that has already been meted out to Marsino, while perhaps not more than he deserved, it would seem that justice demanded that if a substantial doubt existed as to the lawfulness of his present imprisonment, such doubt ought, at this late date, to be resolved in his favor.

An order discharging the petitioner from the custody of the respondent may be entered.