### WILSON v. LANAGAN, Warden.
### No. 5424.

District Court, D. Massachusetts.

June 23, 1937.

Wm. H. Lewis, of Boston, Mass., for petitioner.

BREWSTER, District Judge.

This is a petition for a writ of habeas corpus. While the petitioner was serving sentence in the Hampden County Jail and House of Correction, he was indicted and found guilty in the state court of the offense of conveying into the jail two revolvers, adapted and useful to aid a person in making his escape, and with aiding and assisting a prisoner in endeavoring to escape from the jail by use of said weapons. He was sentenced to the State Prison at Charlestown for a term of not more than ten years. The petitioner seeks to be released from the custody of the warden, alleging that his commitment was unlawful inasmuch as his conviction and imprisonment were without due process of law.

A former petition for a writ of habeas corpus was denied by Judge McLellan after hearing the petitioner and a witness, or witnesses, for the respondent. In that petition apparently Wilson was relying upon the provisions of the Sixth Amendment to the Constitution of the United States, securing the right to be represented by counsel. No appeal was taken from this decision of Judge McLellan.

At the hearing before me, the petitioner not only testified himself, but produced witnesses on his behalf, including several members of the jury which returned the verdict of guilty. The respondent offered in evidence the testimony of the district attorney, the sheriff and deputy sheriff of Hampden county, police officers, and others, including an informal statement by the presiding judge which, by stipulation, was received in evidence. The evidence falls far short of proving the allegations of the petition, but it does establish the following facts:

While it is not incumbent on me to inquire into the guilt or innocence of the petitioner, the parties have deemed it of some materiality to show what transpired at the Hampden County Jail before the trial took place.

Wilson was in jail, serving a sentence of eighteen months for forgery. He was acting as a tier-runner among whose duties was that of carrying packages to and from prisoners in cells. On April 2, 1934, he received from a trusty, named White, a package containing two revolvers. They had been brought to the jail by one Bertha Kaplan and were intended for Bozak, a prisoner who evidently was planning to use them in an attempt to escape. Bozak was not on Wilson's tier, and Wilson dropped the package to the tier-runner below. About six days later the guns were discovered in Bozak's cell. Wilson claims he was unaware of the contents of the package.

When they were discovered, Wilson and Bozak were each put in solitary confinement for a period of a little over nine days. When they were taken out of solitary confinement, Wilson was brought to the office of the sheriff, who was acting as master of the jail, and from the conversation which took place at that time it is quite apparent that, at least as early as April 18, 1934, Wilson knew that the part he had played in connection with the introduction of the revolvers into the jail was the cause of his solitary confinement.

On the 11th day of May, 1934, Wilson with other defendants was brought into the superior court to plead to indictments which the grand jury had returned against them. Wilson pleaded "not guilty," and all those who pleaded "not guilty" at that time were advised by the district attorney that they must be prepared for trial on the following Monday (May 14, 1934) and in the meantime to get in touch with their respective attorneys.

On Saturday, the 12th of May, Wilson met his wife in the office of the sheriff. The attorney, who had previously represented both Wilson and his wife in criminal proceedings, was in the building at the time but did not join in the conversation. Wilson at that time intimated that he might plead guilty and apparently did nothing then about securing an attorney or preparing his defense.

On the 14th of May he, in company with other prisoners, was brought into the superior court and placed in the cage provided for prisoners awaiting trial. Wilson was then handcuffed to his fellow prisoners, as were all the other prisoners (some 25 in number) who had been brought up to the court from jail. Some time was spent in disposing of the defendants who had pleaded guilty. Wilson had some talk with the district attorney about pleading guilty, but, receiving no assurance respecting his sentence, he decided to stand on his plea of not guilty. Wilson then requested the court to assign counsel for him. The justice replied that since it was not a capital case he had no authority to do so, but he offered to instruct the sheriff to communicate with any available attorney whom Wilson might name. Wilson then asked for a continuance in order that he might communicate with his mother, who was in California. After inquiries, made of the defendant and the sheriff, the trial justice concluded that Wilson had not been deprived of an opportunity to get counsel, if he had wanted to do so, and refused his request for further continuance.

Wilson thereupon asked if he might have time to get his witnesses. He was told that if he wanted to give the court the names of his witnesses they would be produced, if available. He gave the name of a fellow prisoner, who was then in court, and the name of Wilson's wife.

A recess was taken in order that Wilson's wife might be located and brought into court, and shortly thereafter she appeared with an attorney in the justice's chambers. After a conference with the wife and officers present, during which the wife positively refused to testify, the justice returned to the courtroom and advised Wilson that his wife had refused to testify and that, if she did, her testimony would not be found to be very helpful to Wilson's defense. All the other parties who could have had any knowledge of the affair were present in the court or readily available, but Wilson made no attempt to avail himself of their testimony.

Before the trial began, Wilson's handcuffs had been removed. He was placed at one end of the cage nearest the jury and beside a deputy sheriff. He conducted his own defense, taking notes and cross-questioning witnesses. He testified himself before the jury and presented his side of the case. There is no evidence before me which would indicate that the trial was not conducted in an orderly and proper manner. The jury returned a verdict of guilty, and the justice imposed the sentence above referred to.

On October 10, 1934, a motion for a new trial was filed in Wilson's behalf by an attorney whom he had secured for that purpose. Among the grounds assigned in the motion for a new trial was the fact that Wilson had been denied an opportunity to adequately prepare his defense. This motion was supported by an affidavit of Bozak, in which he stated that if a new trial were granted he would testify for Wilson, and gave a summary of what he would testify to. The motion was heard by the trial justice and was denied.

On April 8, 1935, Wilson filed in the Supreme Judicial Court of Massachusetts a petition for a writ of habeas corpus, upon which an order of notice was issued, and to which an answer was filed by the respondent. In those proceedings Wilson was represented by his attorney who sub-

sequently withdrew his appearance, and the petition was thereupon dismissed, apparently without hearing.

Subsequently Wilson filed in the Supreme Judicial Court a petition for writ of error, which was denied on June 21, 1935, by a single justice of that court.

On June 25, 1935, the Supreme Judicial Court refused to receive a claim of appeal on the ground that an appeal did not lie in the matter.

On these facts, is the petitioner entitled to a writ of habeas corpus?

The jurisdiction of this court to enlarge a prisoner in jail by the writ is limited by R.S. § 753 (28 U.S.C.A. § 453), which, so far as material, provides that the writ of habeas corpus shall in no case extend to prisoners "in jail unless where he * * * is in custody in violation of the Constitution or of a law * * * of the United States."

■■ The petitioner's contention is that his conviction, sentence, and imprisonment are in violation of the provisions of the Fourteenth Amendment, which forbids any state from depriving one of his liberty without due process of law. The grounds upon which this contention is based do not cover a wide field. The court had jurisdiction over the offense and the offender. The trial after it began was conducted with a due regard for the rights of a defendant on trial for a crime. If there was any invasion of Wilson's constitutional rights, it was in the refusal of the justice to continue the case under the circumstances shown. Generally, the question of a continuance is a matter of discretion not subject to review unless there has been an abuse of the discretion. Whether there has been such an abuse in a proceeding in the state court cannot, I assume, be reviewed in this court in habeas corpus proceedings.

Referring to the power of the court to issue habeas corpus writs, the court in Frank v. Mangum, 237 U.S. 309, 326, 35 S.Ct. 582, 586, 59 L.Ed. 969, 979, said:

"We should have in mind the nature and extent of the duty that is imposed upon a Federal court on application for the writ of habeas corpus under § 753, Rev.Stat. [28 U.S.C.A. § 453], Comp.Stat.1913, § 1281. Under the terms of that section, in order to entitle the present appellant to the relief sought, it must appear that he is held in custody in violation of the Constitution of the United States. Rogers v. Peck, 199 U.S. 425, 434, 26 S.Ct. 87, 50 L.Ed. 256, 260. Moreover, if he is held in custody by reason of his conviction upon a criminal charge before a court having plenary jurisdiction over the subject-matter or offense, the place where it was committed, and the person of the prisoner, it results from the nature of the writ itself that he cannot have relief on habeas corpus. Mere errors in point of law, however serious, committed by a criminal court in the exercise of its jurisdiction over a case properly subject to its cognizance, cannot be reviewed by habeas corpus. That writ cannot be employed as a substitute for the writ of error. [Citations omitted.]

"As to the 'due process of law' that is required by the 14th Amendment, it is perfectly well settled that a criminal prosecution in the courts of a state, based upon a law not in itself repugnant to the Federal Constitution, and conducted according to the settled course of judicial proceedings as established by the law of the state, so long as it includes notice and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is 'due process' in the constitutional sense."

An examination of the cases relied upon by the petitioner reveals that the courts were dealing with factual situations quite different from that in the instant case.

■ The fundamental principle established by these cases is that a person on trial for a serious crime is entitled to something more than the mere pretense of a trial.

It is a well-recognized proposition that if, in fact, a trial is dominated by a mob so that there is an actual interference with the courts of justice, and the state applying no corrective process carries into execution a judgment of imprisonment, based upon a verdict thus produced by mob domination, the state deprives the accused of his liberty without due process of law. Moore v. Dempsey, 261 U.S. 86, 90, 43 S.Ct. 265, 266, 67 L.Ed. 543; Frank v. Mangum, supra.

■ It will be noted generally, in the cases cited, that they were capital cases and that counsel had been assigned to the defendants but under such circumstances that the assignment was a mere gesture. The presence or absence of counsel, therefore, was not a determining factor. If every criminal trial, held without the aid of a defendant's attorney, is a want of due process, then the

established practice in this Commonwealth would have to be materially revised. The Massachusetts Constitution recognizes the defendant's right to have counsel. This right was not denied by the justice. The most that can be said is that Wilson's opportunity to prepare his defense was limited by the short time between arraignment and trial. But, if he had elected to avail himself of what opportunity he had, he could have been fully prepared. The evidence was available, the facts free from complications, and no great amount of time or effort was necessary in order to prepare whatever defense he had.

Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, is authority for the proposition that due process not only includes the right to be represented by counsel employed by defendant, but adequate time for preparation of his defense; and in capital cases it includes the duty to assign counsel if defendant is not otherwise represented. It will be noted, however, that the duty to assign was expressly limited to capital cases. The failure of the trial court to grant delay was deemed a denial of due process because of the particular facts, stated in the opinion, as follows (287 U.S. 45, at page 71, 53 S.Ct. 55, 65, 77 L.Ed. 158, 84 A.L.R. 527):

"* * * the ignorance and illiteracy of the defendants, their youth, the circumstances of public hostility, the imprisonment and the close surveillance of the defendants by the military forces, the fact that their friends and families were all in other states and communication with them necessarily difficult, and above all that they stood in deadly peril of their lives—we think the failure of the trial court to give them reasonable time and opportunity to secure counsel was a clear denial of due process."

None of these facts are present in the case at bar except that Wilson's mother was in California, although his wife was with him in the jail on the Saturday before his trial and in the court at time of trial. This single instance of similarity is not enough to warrant this court, on the facts of this case, in adopting the conclusions of the court in the Powell Case. Here it may be pertinent to recall the words of Mr. Justice Cardozo in Snyder v. Massachusetts, 291 U.S. 97, at page 114, 54 S. Ct. 330, 335, 78 L.Ed. 674, 90 A.L.R. 575:

"A fertile source of perversion in constitutional theory is the tyranny of labels. Out of the vague precepts of the Fourteenth Amendment a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations. Forthwith another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence."

The Constitution of the Commonwealth of Massachusetts, part 1, art. 12, reads:

"No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

The appellate tribunal, in which Wilson questioned the legality of the sentence, saw no contravention of his rights, secured by the Massachusetts Constitution and laws. There was no attempt to carry the federal question, if there was one, to the United States Supreme Court. There are cases holding that even if the court has power to do so, it ought to discharge a prisoner only in cases of emergency and those presenting extraordinary circumstances; and that the power ought not to be exercised until the petitioner has exhausted his remedy, including his petition for certiorari in the Supreme Court. Whitten v. Tomlinson, 160 U.S. 231, 16 S.Ct. 297, 40 L.Ed. 406; United States ex rel. Drury v. Lewis, 200 U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343; New York v. Eno, 155 U.S. 89, 15 S.Ct. 30, 39 L.Ed. 80; Marsino v. Hogsett (D. C.) 37 F.(2d) 409.

Again, quoting from Mr. Justice Cardozo's opinion in Snyder v. Massachusetts, supra, 291 U.S. 97, at page 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, 90 A.L.R. 575:

"The Constitution and statutes and judicial decisions of the commonwealth of Massachusetts are the authentic forms

through which the sense of justice of the people of that commonwealth expresses itself in law. We are not to supersede them on the ground that they deny the essentials of a trial because opinions may differ as to their policy or fairness. Not all the precepts of conduct precious to the hearts of many of us are immutable principles of justice, acknowledged semper ubique et ab omnibus (Otis v. Parker, 187 U.S. 606, 609, 23 S.Ct. 168, 47 L.Ed. 323), wherever the good life is a subject of concern. There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free."

The petition for a writ of habeas corpus is denied.