**CITY OF JACKSON Plaintiff**

v.

**Anthony A. JACKSON Defendants**

**No. CR. 3:02–CR–29LS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 27, 2002.

Michele M. Purvis, City Attorney's Office, Jackson, MS, for Plaintiff.

Mitzi Dease Paige, U.S. Attorney's Office, Jackson, MS, for Defendants.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

This matter is before the court on the motion of Dunn Lampton, United States Attorney for the Southern District of Mississippi, on behalf of defendant Anthony J. Jackson to dismiss pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. In the court's opinion, defendant's motion is well taken for the reason that he is immune from prosecution pursuant to the doctrine of federal supremacy. Accordingly, the court will grant defendant's motion to dismiss.

In the fall of 2001, Sandra Anderson was hired to fill a newly-created position in the Data Processing Office at the United States G.V. "Sonny" Montgomery Veterans Affairs Medical Center (Veteran's Hospital) in Jackson, Mississippi. In preparation for her arrival, defendant Anthony Jackson, Assistant Chief of Medical Administration Service at the Veteran's Hospital, initiated an automated data training plan, and assigned Jan Eldridge, the data processing applications coordinator, to train Anderson on the specific duties of her new position as well as to train her to be the backup for Eldridge's coordinator position.

The record reflects that the training experience proved unsatisfactory for both Eldridge and Anderson. Regarding the matter, Eldridge complained to Jackson that the training was not advancing as planned, primarily because Anderson was frequently absent from her office. Anderson also had complaints about Eldridge. To address these problems, Jackson first attempted to coordinate scheduled times when Eldridge and Anderson could train together. When this failed, Jackson mandated formal meetings between the two employees.

In February 2002, Jackson gave new assignments to Anderson; but her absences from the office persisted, with the result that she failed to complete her work on time. When Anderson failed to meet deadlines for the completion of her work, Jackson directed that with the exception of morning and afternoon breaks, lunch breaks or trips to the rest room, Anderson was to notify him whenever she left her work area.

Despite this directive, Anderson's unauthorized absences continued, as did her failure to complete her work in a timely manner. Thus, in March 2002, Anderson was again warned about her excessive absences, and from that point forward, Jackson began to directly supervise her training, office hours and work. Anderson evidently considered certain of Jackson's supervisory activities to be unwarranted, and on March 28, 2002, she filed a criminal affidavit with the City of Jackson charging Jackson with "stalking" in violation of Miss.Code Ann. § 97-3-107.[1]

On April 4, 2002, Jackson was arrested at the Veteran's Hospital on the criminal charge of stalking and was released on his own recognizance. Thereafter, on April 15, 2002, the United States Attorney for the Southern District of Mississippi filed a notice of removal of the case from the Municipal Court of Hinds County to this court pursuant to 28 U.S.C. § 1442(a), which provides for the removal of

> [a] civil action or criminal prosecution commenced in a State court against ... (1) Any officer of the United States or other agency thereof, or person acting under him, for any act under color of

---

1. That statute provides, in part, as follows:

    Any person who willfully, maliciously and repeatedly follows or harasses another person, or who makes a credible threat, with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00), or by both such fine and imprisonment.

    Miss.Code Ann. § 97-3-107.

    Ms. Anderson charged in her complaint to the policy that her supervisor at work, Jackson, would be sitting in her chair when she arrived at work in the morning; that he followed her around when she left her desk, even when she went to the restroom; that Jackson had advised her that she was to tell him when she left her desk for any reason; and that when he could not follow her around the office himself, he had another employee watch her and report to him.

such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

On April 16, 2002, the magistrate judge entered an order of removal, and defendant subsequently filed this motion to dismiss.[2]

Defendant's motion to dismiss is filed pursuant to Federal Rule of Criminal Procedure 12(b) which states that any defense which is capable of determination without the trial of the general issue may be raised before trial by motion.[3] Fed.R.Crim.P. 12(b); *United States v. Sisson,* 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). The Notes of Advisory Committee on Rules explain that such a defense includes "immunity." *See Texas v. Carley,* 885 F.Supp. 940, 944 (W.D.Tex.1994). Where the defendant raises his Supremacy Clause immunity defense by way of motion to dismiss, the district court should grant the motion in the absence of an affirmative showing by the state that the facts supporting the immunity claim are in dispute. *Idaho v. Horiuchi,* 253 F.3d 359, 367 (9th Cir.2001), *vacated as moot,* 266 F.3d 979 (9th Cir.2001); *Kentucky v.Long,* 837 F.2d 727, 744 (6th Cir.1988); *see also Carley* 885 F.Supp. at 944.

In the landmark case of *In re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890), the Supreme Court established that federal officers were immune from state prosecution for acts committed within the reasonable scope of their duties. The *Neagle* Court found this immunity for federal officers stemming from the Supremacy Clause of the United States Constitution. *See Neagle,* 135 U.S. at 53, 10 S.Ct. 658; *see also* U.S. Const. art. IV, cl. 2. However, Supremacy Clause immunity is not absolute. *United States ex rel. Drury v. Lewis,* 200 U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343 (1906); *Birsch v. Tumbleson,* 31 F.2d 811 (4th Cir.1929); *Castle v. Lewis,* 254 F. 917 (8th Cir.1918). For example, *Drury* clearly supports the proposition that a state may prosecute federal agents if they have acted unlawfully in carrying out their duties. *Drury,* 200 U.S. at 8, 26 S.Ct. 229.

■ Cases since *Drury* have demonstrated that, to be immune from state prosecution under the Supremacy Clause, "a federal officer must do no more than is necessary and proper in the performance of his duties." *Horiuchi,* 253 F.3d at 366; *Long,* 837 F.2d at 744; *Carley,* 885 F.Supp. at 945; *In re McShane,* 235 F.Supp. 262, 274 (N.D.Miss.1964). In this regard, a "two-part" test is now utilized to determine whether a federal agent may be prosecuted for conduct which, on its face, violates a state criminal code: (1) whether the federal agent was performing an act

---

**2.** The court is satisfied that the removal of the state court criminal action under 28 U.S.C. § 1442(a) was proper in this case. It appears that Jackson is an "officer of the United States" within the contemplation of the statute. *See Mesa v. California,* 489 U.S. 121, 125, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) ("finding no disagreement that postal employees were "person[s] acting under" an "officer of the United States or an agency thereof" within the meaning of § 1442(a)(1)"); *Texas v. Carley,* 885 F.Supp. 940 (W.D.Tex.1994) (finding that an employee of the Federal Fish and Wildlife Service who was charged with the offense of trespass was an officer of the United States for purposes of § 1442(a)(1)). Moreover, Jackson, the defendant, has presented a "colorable" federal defense (immunity under the Supremacy Clause) to the state court action as required by the Supreme Court in *Mesa,* 489 U.S. at 129, 109 S.Ct. 959.

**3.** The relevant provision of Rule 12(b) provides:

(b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge.

which he is authorized to do by the law of the United States; and (2) whether, in performing the act, the federal agent did no more than was "necessary and proper" for him to do. *Horiuchi*, 253 F.3d at 366; *Long*, 837 F.2d at 744; *Carley* 885 F.Supp. at 945; *McShane*, 235 F.Supp. at 274–75. For an agent's actions to be adjudged "necessary and proper," the agent must show that he reasonably and honestly believed that what he did was necessary in the performance of his duty and had no other motive than to do his job. *See Horiuchi*, 253 F.3d at 366; *Long*, 837 F.2d at 745; *McShane*, 235 F.Supp. at 274.

■ Insofar as the first element is concerned, the court is satisfied that Jackson, in his capacity as Assistant Chief of Medical Administration Service at the Veteran's Hospital, was performing an act which he was authorized to do by the laws of the United States when he undertook to monitor Anderson's workplace attendance and activities. As attested by Richard J. Baltz, the Medical Center Director, in his uncontested affidavit in support of defendant's motion to dismiss,[4] Jackson was employed at the Veteran's Hospital in a supervisory capacity at the time of the alleged charge; was acting only in the scope of his employment duties when he undertook to monitor Anderson's attendance regularity and job performance; and did not have any contact with Anderson outside the workplace. As Jackson was an employee of the United States who was acting within the scope of his employment duties, the court finds that he was performing functions at the time of the alleged violation which were authorized by the laws of the United States.

The court is also satisfied that the acts which are alleged to have constituted the violation of state law were no more than were necessary and proper for Jackson to carry out his duties. It is apparent that Jackson honestly believed this to be the case, and from the evidence available to the court, this belief was reasonable. In this regard, the evidence plainly shows that Jackson reasonably believed his acts were in the interest of running an efficient work environment at the Veteran's Hospital; he made every effort to deal with Anderson's attendance and nonfeasance problems by informal means; he only required Anderson to report her time away from her workplace when other methods designed to enhance her job attendance and productivity proved ineffective; and his sole motivation was to improve Anderson's job performance and attendance.

In summary, Jackson's supervision of Anderson was a duty entrusted to him by the Director of the Veteran's Hospital and the United States Government. Jackson's conduct was clearly in the performance of an act he was authorized to do as part of his duties under the laws of the United States. Likewise, Jackson fulfilled his duty by actions which were no more than reasonably necessary and proper to carry out his supervisory responsibilities at the Veteran's Hospital.

Accordingly, he is entitled to immunity from criminal prosecution by the state for these acts, and it is therefore ordered that defendant's motion to dismiss under Rule 12(b) of the Federal Rules of Criminal Procedure is granted.

---

4. The court notes that the City of Jackson has not opposed removal, and by letter to the United States Attorney's Office dated July 31, 2002, has announced its unwillingness to proceed in the matter. While this might seem to render the case moot, the government insists that it does not.