Henry Bradford MORGAN and Stephen Michael Swanson, Petitioners/Appellees,

v.

PEOPLE OF the STATE OF CALIFORNIA, Respondent/Appellant.

No. 83–6306.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1984.

Decided Sept. 25, 1984.

Darrell W. MacIntyre, Los Angeles, Cal., Bradley William Brunon, Beverly Hills, Cal., for petitioners/appellees.

Arthur B. Walsh, Deputy City Atty., Los Angeles, Cal., for respondent/appellant.

Before WRIGHT, FERGUSON and RE-INHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

The State of California appeals the district court's order granting petitions for writ of habeas corpus and releasing Henry Morgan and Stephen Swanson from the constructive custody of the Municipal Court of Los Angeles prior to their criminal trial on various misdemeanor offenses. The state contends on appeal that the district court abused its discretion in issuing the writs because material factual disputes concerning the state charges should only have been resolved by state trial. We agree and reverse the district court.

FACTS:

Petitioners Morgan and Swanson, agents with the Drug Enforcement Administration, were charged in Los Angeles Municipal Court with seven misdemeanor counts. The counts stem from an incident occurring on September 1, 1982 between the agents and Roman Tarasiuk and his wife, Ravida Mingaleeva.

The facts surrounding the incident are in dispute. According to Morgan and Swanson, the agents were on their way to a Los Angeles restaurant to meet with an informant. While parking the car, Morgan backed into the front of a Mercedes which was parked at the curb. Morgan, Swan-

son, the driver of the Mercedes, Tarasiuk, and his wife, Ravida Mingaleeva, got into a shouting match over the incident. Morgan claims that at some point during the argument, Tarasiuk pulled his coat open displaying the upper portion of a handgun and looked at Morgan in a "threatening manner." Morgan then advised Tarasiuk that Morgan was a federal agent. Tarasiuk and Mingaleeva immediately left the scene of the incident and went into a nearby shopping center.

Morgan returned to his car and advised Swanson that he intended to arrest Tarasiuk for having threatened a federal officer and for carrying a concealed weapon. Morgan and Swanson located Tarasiuk and Mingaleeva in a jewelry store. Morgan obtained admission to the store and performed a search of Tarasiuk, but did not find a gun. According to Morgan, Tarasiuk then voluntarily accompanied Morgan from the store.

While in the store, Tarasiuk had called the police and informed them that he had been threatened by two drunken men. Shortly after Tarasiuk left the jewelry store with Morgan, two Los Angeles police officers, Lish and Young, arrived at the scene and began to conduct an investigation. Both officers formed the opinion that Morgan and Swanson were under the influence of alcohol. Lish recalled that one of the agents told Lish that the agents were en route to the Police Academy for drinks. Lish and Young decided to request assistance from a supervising police officer, Sergeant Roger Jackson. Upon arriving at the scene, Jackson also formed the opinion that Morgan and Swanson were under the influence of alcohol. Morgan agreed to accompany the officers to the police station. Swanson refused. Morgan was administered field sobriety tests, but refused to submit to a blood test. In the opinion of the police officer performing the sobriety tests, Morgan failed.

Tarasiuk's version of the incident leading up to the arrival of the police varies considerably from the agents'. Tarasiuk claims that in the course of the argument follow-ing the car incident, Morgan struck Tarasiuk and at one point broke a gold chain that Tarasiuk was wearing around his neck. When Mingaleeva attempted to intervene, Swanson struck her with his elbow. When Morgan later found Tarasiuk in the jewelry store, Morgan pointed a gun at Tarasiuk's head and was physically and verbally abusive towards him. Tarasiuk stated that Morgan forced him out of the jewelry store at gunpoint. Mingaleeva's version of the incident is similar to Tarasiuk's.

As a result of the September 1, 1982 incident, Morgan and Swanson were charged in Los Angeles Municipal Court in a seven-count misdemeanor complaint. Morgan and Swanson were jointly charged with: (1) violating the personal liberty of Roman Tarasiuk, in violation of California Penal Code § 236; (2) exhibiting a gun in a rude and threatening manner, in violation of California Penal Code § 417; (3) two counts of using force and violence on Roman Tarasiuk, in violation of California Penal Code § 242; and (4) assault with a deadly weapon, in violation of California Penal Code § 245. Additionally, Swanson was charged with using force and violence on Ravida Mingaleeva, in violation of California Penal Code § 242, and Morgan was charged with driving a vehicle under the influence of alcohol, and a drug, and both, in violation of California Vehicle Code § 23152(a). The agents entered pleas of not guilty and the matter was set for jury trial on February 28, 1983.

On February 3, 1983, Morgan and Swanson filed a joint petition for a writ of habeas corpus in district court, seeking to be released from the constructive custody of the Los Angeles Municipal Court. The agents contended that they could not be prosecuted on state criminal charges as a result of the September 1 incident because they were acting in pursuance of their federal duties. The state court proceedings were stayed pending determination of the petition. On March 14, 1983, an evidentiary hearing commenced before the magistrate. On June 3, 1983, the magistrate submitted his Final Report and Recommen-

dation, in which he recommended that the habeas petition be denied. The district court subsequently filed an order rejecting the magistrate's recommendation and granting the petition. The court concluded that "the record ... supports the claim of petitioners that at the time of the confrontation they were on their way to meet an informer. That confrontation precipitated what upon this petition appears to be good faith actions even if mistaken and overenthusiastic reactions to the circumstances." The state appeals.

## DISCUSSION

*Did the District Court Abuse its Discretion in Granting the Writs?*

■ In the landmark decision of *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890), the Supreme Court held that, by reason of the Supremacy Clause, a federal officer cannot be held on a state criminal charge when the alleged crime arose during the performance of the officer's federal duties:

> [I]f the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as [an officer] of the United States, and if in doing that act he did no more than what was necessary and proper for him to do, he *cannot* be guilty of a crime under the law of the state of California.

135 U.S. at 75, 10 S.Ct. at 672 (emphasis in original). Errors of judgment in what a federal officer conceives to be his legal duty will not alone serve to create criminal responsibility of a federal officer. *Clifton v. Cox,* 549 F.2d 722, 727 (9th Cir.1977). The officer need only demonstrate "that he had an honest and reasonable belief that what he did was necessary in the performance of his duty." *Id.* at 729 (quoting *In re McShane,* 235 F.Supp. 262, 274 (N.D.Miss. 1964)).

A federal district court has power to restrain prosecutions of federal agents charged with violations of state criminal law pursuant to 28 U.S.C. § 2241(c)(2):

> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
> \* \* \* \* \* \*
>
> ■ He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; ...

■ The purpose of affording federal officers habeas relief from state criminal prosecutions is to prevent states from nullifying federal laws by attempting to impede enforcement of those laws. *See In re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55. Habeas relief is deemed proper when the state criminal prosecution is intended to obstruct enforcement of unpopular federal laws. Before the Civil War, for instance, the writ was required to prevent abolitionist states from nullifying the fugitive slave laws by prosecuting federal officers attempting to enforce them. *See Ex parte Jenkins,* 2 Wall.Jr. 521 (1853), *discussed with approval in In re Neagle,* 135 U.S. at 72–73, 10 S.Ct. at 671. More recently, the writ has been necessary to prevent frustration of the civil rights laws by hostile Southern states. *See In re McShane,* 235 F.Supp. 262 (N.D.Miss.1964). The framers of the habeas statute obviously contemplated that the federal interest in preventing states from interfering with the enforcement of federal law would sometimes be great enough to require discharge of the federal officer from state custody.

■ The power of the federal court to enjoin state criminal prosecutions, however, should be sparingly exercised. "It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, ... be taken out of the custody of the officers of the State and finally discharged therefrom...." *United States ex rel. Drury v. Lewis,* 200 U.S. 1, 7, 26 S.Ct. 229, 231, 50 L.Ed. 343 (1906). Thus, under the Supremacy Clause, federal protective immunity will shield a federal agent from state prosecution only when his acts are both (1) authorized by the laws of the United States and (2) necessary and proper to the execution of his responsibilities. *Connecticut v. Marra,* 528 F.Supp. 381, 385 (D.Conn.1981). *See In re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890).

In *Drury*, the Supreme Court imposed the additional requirement that the writ should not be granted except in cases of "peculiar urgency." *Drury v. Lewis*, 200 U.S. at 6, 26 S.Ct. at 231. However, this circuit has broadly interpreted the urgency requirement:

> [S]ufficient urgency is shown whenever it is made to appear that a federal officer is detained on charges of violating state law because of acts committed in the performance of his official duties. Not only would the trial itself keep petitioner from the discharge of his responsibilities in Washington, but considerations basic to our federal system precludes subjecting to state scrutiny conduct which is within the scope of petitioner's official duties . . . .

*Clifton v. Cox*, 549 F.2d at 729 (quoting *In re McShane*, 235 F.Supp. at 274 n. 13).

The district court, after reviewing the transcripts of the evidentiary hearing before the magistrate, concluded that the evidence established that during the incident on September 1, 1982 the agents were acting in good faith pursuit of their federal duties and that therefore the agents could not be prosecuted on state criminal charges. The state contends that the district court abused its discretion in granting the writs because material facts surrounding the incident are in dispute.

In *Drury*, "there was a conflict of evidence as to whether [the victim] had or had not surrendered, and it is conceded that if he had, it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the Federal law, and the state court had jurisdiction." 200 U.S. at 8, 26 S.Ct. at 231–232. Thus, the Court held that when the facts upon which state jurisdiction depend are open to dispute, the federal court should permit the state court to determine those facts. *Id.* Other courts have similarly held that a grant of a writ of habeas corpus prior to a state criminal trial is inappropriate when there are material factual disputes. In *Birsch v. Tumbleson*, 31 F.2d 811 (4th Cir. 1929), the court denied issuance of a writ of habeas corpus to a federal game warden charged in state court with homicide after killing two poachers. There was conflicting evidence as to who fired first. The court, in denying the petition, held that when material facts are "involved in uncertainty and the subject of conflicting testimony," they should be resolved by the verdict of a state court jury. *Id.* at 813. In *Brown v. Cain*, 56 F.Supp. 56 (E.D.Pa. 1944), the court stated that facts showing that an act was done in pursuance of federal law:

> must be either admitted or uncontradicted or, at least, supported by so great a preponderance of evidence that a reasonable mind construing it can hardly come to any other conclusion. Regardless of the conclusion which the judge himself might reach, if there is a substantial conflict of evidence as to basic or controlling facts the Federal Court should refuse to exercise its discretion to release the relator and should remand him to the custody of the State authorities for trial by the State Court.

*Id.* at 59 (granting the writ when there was "hardly any conflict of testimony upon the essential points upon which findings of fact have been made").

The cases cited by Morgan and Swanson in which writs of habeas corpus were granted by the federal court are not to the contrary. In *Baucom v. Martin*, 677 F.2d 1346 (11th Cir.1982), and *Connecticut v. Marra*, 528 F.Supp. 381, the underlying facts were not in substantial dispute. *See Baucom*, 677 F.2d at 1347; *Marra*, 528 F.Supp. at 386–87.

The agents contend, however, that this circuit's decision in *Clifton v. Cox*, 549 F.2d 722, supports the conclusion that a writ may issue when material facts relating to the incident are in conflict. In *Clifton*, the district court permanently stayed all state criminal proceedings arising from an indictment charging Clifton, a special agent for the Bureau of Narcotics and Dangerous Drugs, with second degree murder and involuntary manslaughter. This court affirmed the grant of the writ, holding that Clifton had acted within the scope of his federal authority and that his actions were

necessary and proper to carry out that authority. As pointed out by Morgan and Swanson, material facts relating to the shooting incident from which the state indictment arose were in dispute. However, the *Clifton* court concluded that *even under the state's version of the conflicting evidence,* no evidence existed to support a finding that Clifton "was acting outside the scope of his authority or that he employed means which he could not honestly consider reasonable in discharging his duties." 549 F.2d at 730.

We do not read these cases to hold that a federal court may *never* grant habeas relief when material factual disputes exist concerning the state charges. Rather, the cases must be read in light of the purpose that habeas relief for federal officers was intended to serve. The usefulness of the statute would be severely limited if the availability of federal habeas relief were to turn entirely on the nonexistence of a material dispute over the facts. First, there are almost invariably matters of factual dispute in cases involving criminal charges. Second, when the objective is obstruction or harassment it is far too easy to allege the existence of a factual dispute, even when none exists. All that a local prosecutor would have to do to secure a state court jury trial would be to fabricate a factual allegation that, if true, would negate the officer's reliance on a federal privilege. While we are confident that such attempts would be infrequent, we do not read the relevant cases as preventing the federal courts from responding effectively should one occur.

Given the plain purpose of the habeas statute, it seems clear that "peculiar urgency" would exist if it appeared that the state was prosecuting federal officers in order to frustrate enforcement of federal law. If, after holding an evidentiary hearing, it is apparent to the district judge that the state criminal prosecution was so intended, the writ should be granted even if the judge has to resolve factual disputes to arrive at that conclusion.

Applying these principles to the case at hand, we find that it was an abuse

of discretion for the district court to grant the writs. As noted by the magistrate, "[i]t is impossible to describe the evidence in this case as other than hotly disputed." Under the above line of cases, the grant of the writ was proper only if, (1) viewing the disputed evidence in the light most favorable to the state, it is clear that Morgan and Swanson were acting within the scope of their federal authority and that their actions were necessary and proper to carry out that authority, or (2) it is shown that the state criminal prosecution is intended to frustrate the enforcement of federal law. There is no suggestion in the record that there was any purpose on the part of the state to frustrate federal law enforcement. Similarly, a review of the state charges demonstrates that, in light of the conflicting evidence concerning the charges, the writ should not have been granted.

### 1. Driving Under the Influence

The evidence concerning the agents' purpose for being in the area is in dispute. Although Morgan and Swanson claim that they were on their way to meet with an informant, Lish testified that one of the agents told him that they were en route for drinks at the Police Academy. In any event, Morgan has not demonstrated how it would be necessary and proper for him to drive while under the influence in order to carry out his federal duty of meeting with an informant.

### 2. Actions Prior to Alleged Display of Weapon by Tarasiuk

Tarasiuk and Mingaleeva testified that Morgan and Swanson used force upon them after the collision but prior to the time that Tarasiuk allegedly displayed a gun. We fail to see how any use of force or violence stemming from a minor traffic incident and prior to any display of a weapon by Tarasiuk could be within the scope of the agents' federal authority.

### 3. Actions After Alleged Display of Weapon by Tarasiuk

Once again, the evidence is in dispute as to whether Tarasiuk ever displayed a gun.

**734**

Even if he had, there is a question whether the manner in which he allegedly displayed the gun violated any law which would justify the agents' subsequent actions. Under 18 U.S.C. § 111, it is a crime to forcibly interfere with a federal officer in pursuit of his official duties. First, there is a dispute over whether the agents were in pursuit of official duties; second, it is far from clear that the manner in which Tarasiuk allegedly displayed the weapon was a "forcible interference" with a federal officer.

CONCLUSION

In concluding that the agents were acting in good faith pursuit of their federal duties, the district court necessarily resolved the disputed factual versions of the incident. In the absence of a showing that the state prosecution was intended to frustrate the enforcement of federal law, that factual resolution should have been left to the state court. The order granting the writ is

REVERSED.