943 F.2d 230
 Robert E. WHITEHEAD, Petitioner-Appellant,
v.
Daniel A. SENKOWSKI, Warden, Clinton Correctional Facility,
and Thomas A. Coughlin, III, Commissioner of
Corrections of the State of New York,
Respondents-Appellees.
 No. 1717, Docket 91-2130.
 United States Court of Appeals,
Second Circuit.
 Argued July 10, 1991.
Decided Aug. 29, 1991.
 
 Bennett M. Epstein, New York City (Lawrence M. Herrmann, of counsel), for petitioner-appellant.
 David Joseph Mudd, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., Marc Frazier Scholl, Asst. Dist. Atty., New York County, of counsel), for respondents-appellees.
 Before MESKILL, NEWMAN and PRATT, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of New York, Mukasey, J., dismissing Whitehead's petition for a writ of habeas corpus, sought pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 2241(c)(2) and (3), for failure to exhaust state remedies. Whitehead urges that because he was acting as an agent of the United States government when he committed crimes against New York State, the state court lacked the authority to prosecute him back in 1988 and currently lacks the authority to hear his Supremacy Clause challenge. For this reason, asserts Whitehead, he is exempt from the general requirement that a habeas corpus petitioner exhaust state remedies. Whitehead also asserts that the district court should have held a hearing to assess his Supremacy Clause claim.
 
 
 2
 We reject Whitehead's argument and conclude that the state court should have the opportunity in the first instance to determine the facts on which the state court's jurisdiction is challenged. The order of the district court dismissing Whitehead's petition for failure to exhaust state remedies is affirmed.
 
 BACKGROUND
 
 3
 In the mid-1980s Robert E. Whitehead was an undercover informant for the FBI. He was a principal in an investment banking business. On September 5, 1986 Whitehead was arrested by New York State authorities and charged with fraud and grand larceny. Whitehead had converted refundable fees advanced to him by clients for whom Whitehead had been unable to obtain financing. Whitehead waived the indictment and pleaded guilty to one count of fraud and three counts of grand larceny in New York State Supreme Court on September 26, 1986. Whitehead signed a cooperation agreement which was incorporated into his plea. As a result of the agreement, Whitehead's bail was reduced, and the prosecution agreed to bring to the attention of the sentencing court any cooperation Whitehead provided to federal and state authorities.
 
 
 4
 Whitehead was scheduled for sentencing on March 6, 1987 but failed to appear. It was determined that he had fled to Europe. Whitehead was apprehended in Italy in March 1987 but refused to return voluntarily to the United States. New York instituted extradition proceedings and, in August 1988, Whitehead was extradited to New York.
 
 
 5
 On November 10, 1988 Whitehead attempted to withdraw his guilty plea to the state charges asserting that he was innocent, that his plea had been induced, that he had received ineffective assistance of counsel, and that he had acted as an agent of the federal government when he had committed the actions for which he was prosecuted and therefore was immune from prosecution. Whitehead also filed a petition to remove his state criminal prosecution from New York Supreme Court to the United States District Court for the Southern District of New York. In a Memorandum Order dated November 28, 1988, the removal motion was denied by Judge Mukasey for several reasons: the petition was untimely and Whitehead failed to explain why his petition for removal was late, see 28 U.S.C. § 1446(c)(1); the petition was deficient because it failed to "allege that New York courts have denied him his constitutional or statutory rights to racial equality, or that he cannot enforce these rights in New York courts;" and finally Whitehead's petition failed to assert that he was prosecuted in New York for actions arising out of his activities on behalf of the federal government. Whitehead's motion to stay the state proceedings and his motion to be taken into federal custody were also denied. On January 19, 1989 Judge McQuillan of the New York State Supreme Court, New York County, denied Whitehead's motion to withdraw his plea. Whitehead then made a statement in which he proclaimed his innocence and asked to be released from custody. Immediately prior to announcing Whitehead's sentence the state court made the following statement:
 
 
 6
 Mr. Whitehead, in almost twenty years as a Judge I have never said to an accused that I didn't believe anything that you have said. But I must place on the record, I don't believe anything you have said.
 
 
 7
 This defendant is a quintessential con artist. He's engaged in massive frauds involving millions of dollars and hundreds of victims. No responsible public official should believe anything that this defendant utters.
 
 
 8
 Whitehead was then sentenced to a term of six to eighteen years on January 24, 1989.
 
 
 9
 Whitehead failed to appeal his conviction to the Appellate Division of the New York State Supreme Court and has offered no reason for this default.
 
 
 10
 On November 14, 1989, before Whitehead's opportunity to appeal his state conviction expired, Whitehead filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(c)(2), (3) and 2254. In the petition Whitehead claimed that he was a federal official acting on behalf of the federal government when he committed the state crimes, that he was coerced into pleading guilty, and that he therefore should be exempt from the requirement that habeas petitioners exhaust state remedies prior to seeking relief in federal court. Whitehead further asserted that because he was acting on behalf of the federal government the Supremacy Clause of the United States Constitution immunized him from state prosecution.
 
 
 11
 The district court, Mukasey, J., in an Opinion and Order filed October 17, 1990 and an Amended Opinion and Order filed on October 23, 1990, declined to issue the writ and dismissed Whitehead's petition. In so doing Judge Mukasey found that Whitehead failed to exhaust state remedies and did not fall within any exception to the exhaustion requirement. In fact, the court found that despite knowledge of the appeal procedure, Whitehead consciously chose to forgo that opportunity. The district court also concluded that there was no bar to the state court's adjudicating Whitehead's Supremacy Clause claim raised after the entry of a guilty plea. The judgment dismissing Whitehead's petition was filed on October 22, 1990 and entered on October 24, 1990.
 
 
 12
 Whitehead, on November 9, 1990, filed a motion to expand the record, for reargument and reconsideration of the Amended Opinion of October 23, 1990 pursuant to Rule 3(j) of the civil rules of the court and for a certificate of probable cause pursuant to Fed.R.App.P. 22(b). The district court again heard Whitehead's case. The record was expanded to include documentation that Whitehead had indeed filed a notice of appeal and a request for appointed counsel due to poverty. The request for appointed counsel had been denied without prejudice pending Whitehead's provision of certain tax returns, an affidavit listing his assets and sources of income, and a copy of the retainer agreement with his lawyer. Whitehead had failed to provide either the necessary information or an adequate explanation for its absence. The Appellate Division therefore had denied Whitehead's application without prejudice to renewal upon Whitehead's furnishing the missing information. After considering the expanded record the district court, in an Opinion and Order filed on February 21, 1991, adhered to its earlier decision. The district court, however, did grant Whitehead's request for a certificate of probable cause "[i]n view of the novelty if not the substantiality of Whitehead's claims."
 
 
 13
 On appeal Whitehead contends that Judge Mukasey should have held an evidentiary hearing on his Supremacy Clause claim. Whitehead asserts that the state is incapable of protecting his rights because a Supremacy Clause claim is involved, and that his state court guilty plea does not preclude his raising the immunity claim for the first time on collateral attack in federal court.
 
 
 14
 We consider whether Whitehead is exempt from the habeas corpus exhaustion requirement because he raises a Supremacy Clause claim.
 
 DISCUSSION
 
 15
 Typically, before assessing a claim made on appeal we determine whether that claim was preserved for appellate review. In the instant case Whitehead did not raise his Supremacy Clause claim before the state court prior to entering a plea of guilty. He raised the issue for the first time immediately prior to his sentencing. Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea. Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). In disposing of this appeal we will assume for the sake of argument that Whitehead has preserved the issue for review.
 
 
 16
 Looking now to Whitehead's Supremacy Clause claim, we first examine the historical basis for Whitehead's contention. The Supremacy Clause of the United States Constitution states:
 
 
 17
 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
 
 
 18
 U.S. Const. art. VI, cl. 2. The Supreme Court elaborated on this when the Court held that "the states have no power ... to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared." McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819).
 
 
 19
 The limitations on a state's enforcement of its own laws were laid out in Tennessee v. Davis, 100 U.S. (10 Otto) 257, 25 L.Ed. 648 (1879), wherein the Supreme Court upheld the constitutionality of legislation providing for removal to federal court of a state criminal prosecution in which the defendant claimed federal authority to commit the acts for which he was being prosecuted. Id. at 271. The removal legislation had been enacted several years earlier. Along with the removal statutes, Congress had enacted habeas corpus provisions for federal officials prosecuted in state court. See 28 U.S.C. § 2241(c)(2). The habeas corpus alternative was provided to avoid the lengthy process of obtaining a writ of error from the federal court to the state's highest court. See Ohio v. Thomas, 173 U.S. 276, 284, 19 S.Ct. 453, 455, 43 L.Ed. 699 (1899).
 
 
 20
 The habeas corpus provisions were grounded in the Supremacy Clause and were enacted, in part, to avoid state frustration of federal law enforcement efforts. In assessing the habeas corpus provisions the Supreme Court has consistently held that federal supremacy determines a state court's jurisdiction to try a federal official of a state crime, as was the case in Davis. See, e.g., Johnson v. Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920) (state lacks authority to require postal employee to obtain state driver's license to deliver mail in government truck); Thomas, 173 U.S. 276, 19 S.Ct. 453 (governor of federally instituted soldier's home not subject to state law requiring posting of notice when serving oleomargarine); In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890) (federal marshal who shot and killed a man while protecting United States Supreme Court Justice not required to answer in state court for his action).
 
 
 21
 Neagle, 135 U.S. 1, 10 S.Ct. 658, set the standard for habeas petitioners seeking relief from state charges rooted in their actions as federal agents or officials. Neagle established a two-part test for determining whether a state court has jurisdiction to prosecute a federal official for his conduct that is in violation of state law.
 
 
 22
 Under Neagle, a state court has no jurisdiction if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do.
 
 
 23
 Commonwealth of Kentucky v. Long, 837 F.2d 727, 744 (6th Cir.1988); see Neagle, 135 U.S. at 75, 10 S.Ct. at 672. Thus, if a court determines that a defendant charged with a state law violation was a federal agent, performing authorized acts, and doing no more than necessary to perform his tasks at the time of the charged improper conduct, a writ of habeas corpus may issue to release the defendant from state custody. This holds true as long as the defendant reasonably believed that his actions were necessary to perform that job, see Clifton v. Cox, 549 F.2d 722, 728 (9th Cir.1977), and had no motive other than to do his job. See In re McShane's Petition, 235 F.Supp. 262, 273 (N.D.Miss.1964); see also Long, 837 F.2d at 744-45. Thus the agent must have a subjective belief that his conduct was justified, and that belief must be objectively reasonable. Id. at 745.
 
 
 24
 The Neagle test, however, is not always easily applied. There often exist disputes over the facts inherent in the determination of federal authorization of the acts in question and whether the agent did no more than was "necessary and proper." Such factual disputes must be confronted while the court walks the fine line created between the goal of protecting federal officials acting in the scope of their duties and the obligation to avoid granting a license to federal officials to flout state laws with impunity. See Long, 837 F.2d at 746.
 
 
 25
 The need to exercise caution in invoking the Supremacy Clause has often been acknowledged. Courts dealing with the sensitive issues raised by the state prosecution of a federal official have recognized that:
 
 
 26
 "It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the State and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a State be finally prevented."
 
 
 27
 United States ex rel. Drury v. Lewis, 200 U.S. 1, 7, 26 S.Ct. 229, 231, 50 L.Ed. 343 (1906) (quoting Baker v. Grice, 169 U.S. 284, 290, 18 S.Ct. 323, 325, 42 L.Ed. 748 (1898)); see, e.g., Long, 837 F.2d at 749 (focus of Supremacy Clause is "delicate balance between federal and state law enforcement powers"); Morgan v. California, 743 F.2d 728, 731 (9th Cir.1984) (federal court's power to enjoin state prosecutions should be exercised sparingly). This "delicate jurisdiction" requires courts to assess carefully the interests implicated by each habeas corpus petition raising a Supremacy Clause claim to avoid criminal prosecution in state court.
 
 
 28
 The Supreme Court performed this balancing act for us in Drury, 200 U.S. 1, 26 S.Ct. 229. In Drury United States Army personnel were arrested by state officials for shooting and killing a man suspected of looting a federal arsenal. The soldiers filed a petition for a writ of habeas corpus after their arrest but prior to trial. There was conflicting evidence about the circumstances surrounding the shooting--it was unclear whether the suspect was attempting to escape or was attempting to surrender when he was shot. The defense conceded that if the suspect was not attempting to escape, there would be no basis for calling on the Supremacy Clause to protect the soldiers. The Drury Court, in affirming the denial of the petition for a writ of habeas corpus, held the following:
 
 
 29
 The Circuit Court was not called on to determine the guilt or innocence of the accused. That was for the state court if it had jurisdiction, and this the state court had, even though it was petitioners' duty to pursue and arrest Crowley ... if the question of Crowley's being a fleeing felon was open to dispute on the evidence; that is, if that were the gist of the case, it was for the state court to pass upon it, and its doing so could not be collaterally attacked.
 
 
 30
 Id. at 8, 26 S.Ct. at 232. Thus, Drury stands for the proposition that if there is a dispute over the basis for invoking the Supremacy Clause and divesting the state court of jurisdiction, the state court has jurisdiction to determine the relevant facts unless there exists a "peculiar urgency" warranting immediate invocation of federal jurisdiction. Id. at 6, 26 S.Ct. at 231 (quoting Baker, 169 U.S. at 290, 18 S.Ct. at 325). The Supreme Court in Drury further recognized that it has "repeatedly held that the acts of Congress in relation to habeas corpus do not imperatively require the Circuit Court to wrest petitioners from the custody of state officers in advance of trial in the state courts." Id. at 8, 26 S.Ct. at 232. This discretion in such habeas corpus cases minimizes the interference in state law enforcement efforts.
 
 
 31
 The Drury analysis has been followed by courts over the years. See, e.g., Birsch v. Tumbleson, 31 F.2d 811, 813-14 (4th Cir.1929); Brown v. Cain, 56 F.Supp. 56, 59 (E.D.Pa.1944). In Morgan, 743 F.2d 728, the Court of Appeals held that the writs of habeas corpus would issue properly only if the Neagle test was satisfied without dispute or, if there was dispute, as long as there was a "peculiar urgency," see Drury, 200 U.S. at 6, 26 S.Ct. at 231 (quoting Baker, 169 U.S. at 290, 18 S.Ct. at 325), such as "if it appeared that the state was prosecuting federal officers in order to frustrate enforcement of federal law." Morgan, 743 F.2d at 733. Because there were material factual disputes and there was no urgency or indication that the state sought to thwart federal law enforcement the Ninth Circuit reversed the district court's grant of the petitions for writs of habeas corpus.
 
 
 32
 Thus, in assessing Whitehead's claim we must balance carefully the interest in enforcing federal laws and protecting those who enforce the federal laws with the desire to minimize interference in the enforcement of state laws. It is against this backdrop that we turn to the facts of Whitehead's case.
 
 
 33
 Whitehead's claimed immunity arises out of his participation as an undercover informant for the FBI. Whitehead asserts that any crimes he committed were known to and countenanced by the government of the United States and that such crimes were necessary for the performance of his duties as an undercover agent. Whitehead urges us to remove him swiftly from the state forum because further state proceedings would require him to reveal sensitive federal government information. In support of his posture Whitehead submitted affidavits from FBI agents acknowledging Whitehead's participation in investigations.
 
 
 34
 Contrary to Whitehead's claim, however, the FBI affidavits do not support his contention. While the affidavits do acknowledge that Whitehead had a working relationship with the FBI, they also indicate that the FBI did not authorize Whitehead to perform the acts for which Whitehead was prosecuted. Whitehead's assertions rest on the absence of denials by the FBI rather than on their concessions or admissions. Relying on the absence of denials is, to say the least, highly speculative.
 
 
 35
 Whether Whitehead was acting on behalf of the United States when he engaged in the fraudulent loan transactions and, if he was, whether he was doing only what he reasonably believed was necessary for the fulfillment of his duties, is disputed. This dispute centers on facts crucial to the invocation of the Supremacy Clause and the immunity it can provide. This dispute should be resolved by the state in the first instance absent some urgency. See Drury, 200 U.S. at 8, 26 S.Ct. at 231; Long, 837 F.2d at 746; Morgan, 743 F.2d at 732-33.
 
 
 36
 Whitehead's claim bears none of the urgency that might persuade us that the federal courts could more objectively decide this question. See Drury, 200 U.S. 1, 26 S.Ct. 229. This lack of urgency is most clearly exhibited by the occurrences in the time since Whitehead was charged with the state crimes. Whitehead did not immediately raise his Supremacy Clause claim, instead he pleaded guilty to the state charges. Prior to sentencing Whitehead left the country and returned only after formal extradition proceedings were completed. The record also provides no indication that the state prosecuted Whitehead in an effort to interfere in federal law enforcement efforts. See Morgan, 743 F.2d at 733. Finally, there is no suggestion that Whitehead is necessary to any effective function of the federal government. See Thomas, 173 U.S. at 284-85, 19 S.Ct. at 455-56.
 
 
 37
 Due to the dispute over material facts and because Whitehead's petition lacks urgency, there is no reason to wrest this action from the state court before the state has had an opportunity to ascertain the facts upon which Whitehead's claims are based. Because the factual determination should be made by the state court, a hearing in federal court for the same purpose would be inappropriate.
 
 
 38
 Contrary to Whitehead's assertion, the state is not without power to prosecute federal officials from the outset. The state has jurisdiction to prosecute violators of state laws unless and until it is determined that the perpetrator of the state crimes was acting under authority of the laws of the United States and was doing nothing more than was necessary to carry out his duties and thus "cannot be guilty of a crime under the law of the [state]." Neagle, 135 U.S. at 75, 10 S.Ct. at 672. As we have already stated, the factual dispute surrounding Whitehead's role as an informant must be resolved before it can be determined that Whitehead was acting under authority of the federal government. The proper forum for that factual resolution is the state court.
 
 
 39
 Thus, even if we assume that Whitehead did not waive his Supremacy Clause claim by pleading guilty, the order of the district court dismissing Whitehead's petition for a writ of habeas corpus for failure to exhaust state remedies should be and hereby is affirmed.