People of the State of COLORADO, Plaintiff,

v.

Donald NORD, Defendant.

In re Contempt Citation Issued to: Dan Kelliher, Doug Cortinovis, Dwight Murphy, Mike Lovin, Jenny Hoefner, and Todd Reece, Respondents.

No. CRIM. 04–CR–26–WM.

United States District Court, D. Colorado.

July 20, 2005.

Michael E. Hegarty, Bernard E. Hobson, Assistant United States Attorneys.

Judge James H. Garrecht, Routt County Judge, Steamboat Springs.

Kristopher L. Hammond, Oliphant, Hammond, Atwell & Combs, LLC, Steamboat Springs.

## ORDER

MILLER, District Judge.

This matter is before me on respondents Doug Cortinovis, Jenny Hoefner, Dan Kelliher, Mike Lovin, Dwight Murphy, and Todd Reece's (Respondents) motion to dismiss these criminal contempt proceedings initiated in the County Court of Routt County, Colorado.

*Background*

This matter arises from the actions of Respondents as members of the Grand, Routt, and Moffat Narcotics Enforcement Team (GRAMNET), a Drug Enforcement Agency (DEA) task force. GRAMNET includes DEA agents as well as local law enforcement personnel who work full time for GRAMNET. Respondent Cortinovis is a DEA agent; the remaining respondents are local law-enforcement personnel deputized as DEA agents under 21 U.S.C. § 878 and who are under the "direct supervision and control of DEA supervisory personnel." (Mot. Dismiss, Ex. A–11; Ex. A–12, ¶ 2.)

In the course of his duties for GRAMNET, respondent Kelliher applied for and obtained a search warrant from the Routt County Court to search defendant Donald Nord's (Nord) residence. The warrant was executed on October 14, 2003. During the search, Nord told the officers that he was the holder of a valid medical marijuana registry card, authorizing him to possess two ounces of marijuana for medical purposes under Colorado law, specifically Article XVIII, Section 14 of the Colorado Constitution. The officers ignored his card and cited him for violations of state law. They also confiscated various items, including Nord's medical marijuana registry card, a heat lamp, a scale with rolling papers, approximately five ounces of marijuana, three marijuana plants, and four marijuana pipes. By the terms of the warrant, Respondents were required to keep safe all items they seized until further order of the court.

On November 4, 2003, the Routt County Court dismissed the charges against Nord as untimely filed. No federal charges have been filed.

On November 17, 2003, Nord moved the Routt County Court to order the return of the confiscated property, under Article

XVIII, Section 14(2)(e) of the Colorado Constitution.[1] The state prosecutor opposed the motion, claiming return would be contrary to federal law. Nevertheless, after hearing, the court granted Nord's motion in an order effective December 8, 2003, limiting the return of marijuana to the two ounces permitted under Section 14, but otherwise directing return of the seized items.

Nord received all of his property back except for the marijuana and the pipes. Rather than complying or otherwise responding to the court's order, respondent Cortinovis simply destroyed the pipes at the direction of his supervisor, DEA agent Kevin Merrill (Merrill). Cortinovis had previously sent the marijuana to the DEA laboratory in San Francisco. He told the laboratory to destroy the marijuana, again pursuant to instruction from Merrill. Merrill has since directed the laboratory to hold the marijuana pending further instruction.

On December 31, 2003, Nord filed a motion asking the Routt County Court to hold Respondents in contempt for their refusal to return the marijuana and the pipes. On January 6, 2004, the court ordered Respondents to show cause why they should not be held in contempt of court under Colo. R. Civ. P. 107. Shortly thereafter, Respondents sought removal of these proceedings to this Court, pursuant to 28 U.S.C. § 1442(a)(1). After a hearing, I determined that such removal was proper.

Respondents now move to dismiss the contempt citation, arguing that they are immune from prosecution under the Supremacy Clause because they were enforcing federal drug laws, and that the Controlled Substances Act (CSA), 21 U.S.C. §§ 801–904, preempts Article XVIII, Section 14 of the Colorado Constitution. Nord has resisted the motion, but the state prosecutor has failed to enter an appearance. Nevertheless, the matter has been fully briefed, and oral argument would not assist me.[2] Given the recent holding of *Gonzales v. Raich*, —— U.S.——, 125 S.Ct. 2195, —— L.Ed.2d —— (2005), the matter is ripe for decision.

### Standard of Review

In a case removed under 28 U.S.C. § 1442(a)(1), the court should apply the state substantive law, but the federal rules

1. Section 14(2)(e) provides:

   Any property interest that is possessed, owned, or used in connection with the medical use of marijuana or acts incidental to such use, shall not be harmed, neglected, injured, or destroyed while in the possession of state or local law enforcement officials where such property has been seized in connection with the claimed medical use of marijuana. Any such property interest shall not be forfeited under any provision of state law providing for the forfeiture of property other than as a sentence imposed after conviction of a criminal offense or entry of a plea of guilty to such offense. Marijuana and paraphernalia seized by state or local law enforcement officials from a patient or primary care-giver in connection with the claimed medical use of marijuana shall be returned immediately upon the determination of the district attorney or

   his or her designee that the patient or primary care-giver is entitled to the protection contained in this section as may be evidenced, for example, by a decision not to prosecute, the dismissal of charges, or acquittal

   Colo. Const. Art. XVIII, § 14(2)(e).

2. Nord requested an evidentiary hearing but did not indicate what facts he would seek to adduce or how they would be relevant to the issues to be decided. Indeed, no dispute of relevant fact has been identified by either party.

   There is no implicit right to a hearing in the context of a motion to dismiss. *See Liverman v. Comm. on the Judiciary*, 51 Fed.Appx. 825, 827 (10th Cir.2002) (unpublished table decision). Nord has failed to demonstrate the need for or entitlement to an evidentiary hearing.

of procedure. *Arizona v. Manypenny*, 451 U.S. 232, 241, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). The substantive law here concerns contempt of a state court which is generally governed by Colo. R. Civ. P. 107. Because this matter involves the threat of criminal contempt,[3] I will apply the Federal Rules of Criminal Procedure. Under Fed.R.Crim.P. 12(b), criminal charges may be dismissed if insufficient to charge an offense. *United States v. King*, 581 F.2d 800, 802 (10th Cir.1978). *See also* Fed. R. Crim P. 12(b)(2) ("[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue"); Fed. R.Crim.P. 12 advisory committee's note to subdivision (b)(1) and (2) (rule encompasses defenses such as immunity). A motion to dismiss under Rule 12 should be granted only if the underlying facts supporting the defense are not in dispute. *See New York v. Tanella*, 374 F.3d 141, 148 (2d Cir.2004); *Idaho v. Horiuchi*, 253 F.3d 359, 367, *vacated as moot*, 266 F.3d 979 (9th Cir.2001); *Kentucky v. Long*, 837 F.2d 727, 740 (6th Cir.1988); *City of Jackson v. Jackson*, 235 F.Supp.2d 532, 534 (S.D.Miss.2002).

## Discussion

Respondents argue that they are protected from liability under the Supremacy Clause of the United States Constitution:[4]

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

■ Under certain circumstances, the Supremacy Clause provides immunity to federal officers from state prosecution. *Tanella*, 374 F.3d at 147. In *Cunningham v. Neagle*, the Supreme Court held that if a federal official:

is held in state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as [an officer] of the United States, and if, in doing that act, he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under the law of [a State].

135 U.S. 1, 75, 10 S.Ct. 658, 34 L.Ed. 55 (1890). Consequently, under the "federal immunity" defense, "a state court has no jurisdiction if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Long*, 837 F.2d at 744. *See also Horiuchi*, 253 F.3d at 366 ("[f]ederal agents will be

---

**3.** The state court order and the contempt citation both threatened imprisonment that may, upon advice of a right to jury trial, exceed six months. Colo. R. Civ. P. 107(d)(1).

**4.** Respondents also argue that they are immune under 21 U.S.C. § 885(d), which provides that "no civil or criminal liability shall be imposed *by virtue of this subchapter* on any duly authorized" law enforcement officer "lawfully engaged" in the enforcement of any controlled substances law. 21 U.S.C. § 885(d) (emphasis added). There is little case law on this provision, and none that discusses whether the provision provides broad immunity for any action taken in furtherance of drug law enforcement as argued by Respondents. By its plain language, § 885(d) appears not to apply here, as any threatened liability would not be imposed "by virtue of" the CSA. Even if § 885(d) did apply, however, the "lawfully engaged" language would mandate a similar analysis to that I undertake below concerning the federal immunity defense.

immune from state prosecution if they acted in an objectively reasonable manner in carrying out their duties"); *Whitehead v. Senkowski*, 943 F.2d 230, 234 (2d Cir. 1991).

▮ This jurisdictional status carries over to the federal court:

> [A] federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction, and where the state court lacks jurisdiction over the subject matter ..., the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have had jurisdiction.

*Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir.1998). *See also Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Edwards v. U.S. Dept. of Justice*, 43 F.3d 312, 316 (7th Cir.1994); *Crow v. Wyoming Timber Prod. Co.*, 424 F.2d 93, 96 (10th Cir.1970). Therefore, if the two elements of the federal immunity defense are present, then I too lack jurisdiction over the contempt citation, and must dismiss it.

▮ Regarding the first element, Nord initially disputes that the Respondents were acting as federal agents because, among other things, they confiscated Nord's property pursuant to a state court issued warrant. However, Respondents were either federal employees (Cortinovis) or deputized DEA agents (Hoefner, Lovin, Kelliher, Murphy, and Reece) who worked full time for a DEA-sponsored task force supervised by DEA personnel. Courts have consistently treated local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents. *See United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998) (local police detective deputized to participate in federal narcotics investigation is a federal officer within the meaning of 18 U.S.C. § 115(a)(1)(B)); *United States*

*v. Torres*, 862 F.2d 1025, 1030 (3d Cir. 1988) (same); *Amoakohene v. Bobko*, 792 F.Supp. 605, 607 (N.D.Ill.1992) (arrestee prohibited from bringing § 1983 suit against DEA task-force members, including deputized local law enforcement officers, because task-force members were acting as federal agents, not state actors, even though they arrested him on municipal charges).

When the Routt County Court ordered the return of Nord's property, the marijuana was in the custody of a DEA laboratory, the pipes were in the custody of GRAMNET, and the direction to retain the items issued from Merrill, who exercised control and supervision over the Respondents under the task-force agreement. Consequently, I find that Respondents were acting as federal agents when refusing to comply with the Routt County Court's order.

▮ An issue remains, however, whether their actions or omissions were authorized under federal law. The federal immunity defense does not require express statutory authorization for a federal officer's specific act; instead, the necessary authority may be derived from "the general scope of the officer's duties." *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982). Here, Respondents were authorized under 21 U.S.C. § 878 to, among other things, make seizures of property pursuant to the CSA and perform such other law enforcement duties as may be designated by the Attorney General. (*See, e.g.* Mot. Dismiss, Ex. A–11.) Under the CSA, possession of marijuana is illegal, 21 U.S.C. § 844(a), and Nord's marijuana is subject to forfeiture and destruction. 21 U.S.C. §§ 881(a)(1) & (f). The pipes, as either containers of marijuana or paraphernalia, are likewise subject to forfeiture and ultimate destruction. 21 U.S.C. §§ 881(a)(3), (a)(10) & (f). Accordingly,

refusing to return the marijuana and the pipes, and their ultimate destruction, would be consistent with federal law.

■ Furthermore, even if federal law did not specifically authorize Respondents' conduct, a federal officer is still entitled to immunity when he acts in good faith within the general scope of his duties as he understood them. *Baucom*, 677 F.2d at 1350 ("[e]ven if the officer makes an error in judgment in what the officer conceives to be his legal duty, that alone will not serve to create criminal responsibility in a federal officer"). *See also Clifton*, 549 F.2d at 728 ("even though his acts may have exceeded his express authority, this did not necessarily strip petitioner of his lawful power to act under the scope of authority given to him under the laws of the United States"). There is no suggestion that Respondents "acted because of any personal interest, malice, actual criminal intent, or for any other reason than to do [their] duty as [they] saw it." *Baucom*, 677 F.2d at 1350.

Nord challenges this analysis by claiming that the CSA, and acts pursuant to it, are unconstitutional as applied to his purely intrastate cultivation and personal use of marijuana for medical purposes pursuant to Colorado law. He urges that such application cannot be authorized under the Commerce Clause and is violative of the Fifth, Ninth and Tenth Amendments. His brief emphasizes the Commerce Clause argument and relies heavily on *Raich v. Ashcroft*, 352 F.3d 1222, 1234 (9th Cir. 2003), in which the Ninth Circuit held that the CSA, as applied to intrastate use of medical marijuana, was invalid under the Commerce Clause. Since that argument, however, the Supreme Court has reversed the Ninth Circuit and held that wholly intrastate, non-commercial cultivation, possession and use of marijuana in accordance with state law does not place a person in Nord's position beyond the reach of the CSA. *Raich*, 125 S.Ct. at 2215. Accordingly, the Commerce Clause argument is of no avail to Nord.

His arguments based upon the Fifth, Ninth and Tenth Amendments are less clear but likewise unavailing. Even assuming these amendments might somehow invalidate the relevant provisions of the CSA, Respondents would still be entitled to the protections of the federal immunity defense because they believed their actions were proper under the CSA.

Courts determining whether a federal officer has acted within the scope of his federal authority focus on the intent of the officer and not the actual legality of his action. *See Tanella*, 374 F.3d at 152 ("[w]e need not and do not decide that [the defendant officer] correctly evaluated the circumstances, but only that he honestly and reasonably perceived" his conduct as justified); *Horiuchi*, 253 F.3d at 364 (Hawkins, J., dissenting) (when an officer believes he is acting within his duties but in fact exceeds his authority and invades the rights of others, he may be personally liable to a private individual but cannot be held criminally liable by a different government); *Baucom*, 677 F.2d at 1350 (errors in judgment of legal duty cannot alone create criminal liability); *Clifton*, 549 F.2d at 722 (same); *New York v. Tanella*, 239 F.Supp.2d 291, 298 (E.D.N.Y.2003) (officer who reasonably believes actions were necessary in the performance of duties is immune from criminal liability), *aff'd*, 374 F.3d 141 (2d Cir.2004).

As a result, I find that Respondents were performing acts that were authorized or that they reasonably believed were authorized by valid federal law. *See Baucom*, 677 F.2d at 1350. Accordingly, Respondents meet the first element of the federal immunity defense.

With regard to the second element of the federal immunity defense, namely

whether Respondents' actions were no more than "necessary and proper" to carry out their duties, two conditions must be satisfied. First, Respondents must have subjectively believed that their actions were necessary or justified; and second, that belief must have been objectively reasonable. *Tanella*, 374 F.3d at 147; *Long*, 837 F.2d at 745.

■ In addressing this element, the *Long* and *Tanella* courts established a shifting burden between the parties: once a federal officer raises the threshold defense of immunity, the party seeking to impose liability has the burden of producing evidence "sufficient at least to raise a *genuine* factual issue whether the federal officer was … doing no more than what was necessary and proper for him to do in the performance of his duties." *Tanella*, 374 F.3d at 148 (emphasis in original) (*quoting Long*, 837 F.2d at 752). Nord has failed to meet this burden.

Regarding the first condition, there is no evidence that Respondents acted with any motive other than doing their duty as they perceived it.[5] *See Tanella*, 374 F.3d at 149; *Baucom*, 677 F.2d at 1350.

Similarly, Nord has failed to provide any evidence that would support a finding that Respondents' belief in the propriety of their conduct was objectively unreasonable. The fact that respondent Cortinovis destroyed the pipes, rather than merely retaining them pending the outcome of these proceedings, may make this particular conduct more questionable. Nonetheless, in light of the CSA's provisions denying any property right in such items and authorizing their forfeiture and ultimate destruction, this circumstance alone does not raise a material issue of fact regarding the reasonableness of his belief that he was justified in destroying the pipes. *See*

*Tanella*, 374 F.3d at 152 (finding no material issue of fact whether defendant honestly and reasonably thought his action justified); *Clifton*, 549 F.2d at 728 (noting that immunity "does not require [an officer] to show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be"); *Baucom*, 677 F.2d at 1350 ("if the officer makes an error in judgment in what the officer conceives to be his legal duty, that alone will not serve to create criminal responsibility in a federal officer").

Adopting and applying the burden-shifting analysis, I find that Nord has not come forward with an evidentiary showing sufficient to raise a factual issue whether any of the Respondents' conduct was unnecessary or improper. Consequently, both elements of the federal immunity defense are met, and Respondents are entitled to its protection. I therefore conclude that such immunity denies the state court of jurisdiction to hold Respondents in contempt for their conduct, and, as a consequence, I likewise lack jurisdiction. The motion to dismiss must be granted.

Accordingly, it is ordered:

1. Defendant's request for an evidentiary hearing (Docket No. 17) is denied.

2. Respondents' motion to dismiss (Docket No. 2) is granted, and these proceedings are dismissed with prejudice.

---

5. It should be noted in this context that the disposition of the items was directed by Merrill, the Respondents' superior officer, who is not a party to these proceedings.